**Rita Sanders GEIER, et al., Plaintiffs,**

**United States of America, Plaintiff–Intervenor,**

**Raymond A. Richardson, Jr, et al., Plaintiff–Intervenors,**

**H. Coleman McGinnis, et al., Plaintiff–Intervenors,**

v.

**Don SUNDQUIST, et al., Defendants.**

**No. 5077.**

United States District Court, M.D. Tennessee, Nashville Division.

Sept. 27, 2002.

George Barrett, Barrett, Johnston & Parsley, Nashville, TN, for plaintiffs Geier, et al.

Michael S. Maurer, Pauline A. Miller and Geoffrey L.J. Carter, U.S. Department of Justice, Civil Rights Division–Educational Opportunities Section, Washington DC, James Vines, U.S. Attorney, Robert C. Watson, Asst. U.S. Attorney,

Nashville, TN, for plaintiff/intervenor USA.

Richard Dinkins, Dodson Parker Dinkins & Behm, Nashville, TN, Melissa Woods, Elaine Jones and Norman Chachkin, NAACP Legal Defense and Educational Fund, Inc., New York, NY, for plaintiffs/intervenors Richardson, et al.

John L. Norris and James L. Weatherly, Hollins, Wagster & Yarbrough, Nashville, TN, for plaintiffs/intervenors McGinnis, et al.

Kate Eyler and Kevin Steiling, Office of the Attorney General of the State of Tennessee, Paul G. Summers, Attorney General and Reporter, State of Tennessee, Nashville, TN, for defendants.

Lewis L. Laska, J.D., Ph.D., Professor of Business Law, Tennessee State University, Nashville, TN, for amicus curiae.

Robert L. Smith and Renard A. Hirsch, Sr., Smith & Hirsch, Nashville, TN, for TSU–NAA.

Carlos Gonzalez, Atlanta GA, Mediator.

## OPINION AND ORDER ON ATTORNEY FEES

WISEMAN, Senior District Judge.

Before the Court are the applications for award of fees to plaintiffs' counsel pursuant to 42 U.S.C. § 1988. The application is for fees for the period June 1987 to January 2001 for Messrs. Barrett, Dinkins and attorneys at the NAACP Legal Defense Fund (hereinafter LDF). Attorneys for the McGinnis intervenor have been paid using a lodestar method at $250 per hour. Council for plaintiffs Geier and Richardson request oral argument. The Court finds this unnecessary and will decide the matter on the submitted papers. The motion for oral argument and the motion to submit to mediation are denied.

Counsel for Geier and Richardson depreciate the contribution of the McGinnis intervenor's counsel, Messrs. Norris and Weatherly. The Court finds this comparison distasteful and untrue. The McGinnis intervenor advanced complaints against the administration and faculty of Tennessee State University that white students and professors were receiving discriminatory treatment in an effort to maintain the black composition of both faculty and student body. The original Geier plaintiff and Richardson intervenor had not and did not advance this aspect of the problem. Mr. Norris, Mr. Weatherly, and Ms. Arthur (now Judge Trauger) were excellent lawyers who performed well throughout the litigation.

The Court first notes that there have been previous fee awards in this long running litigation, all determined by the lodestar method after the 1984 Stipulation of Settlement:

| | | |
|---|---|---:|
| 11/15/85 | interim fee to A. Arthur, McGinnis intervenor | $ 6,300.00 |
| | interim fee to John Norris | 3,132.00 |
| | interim fee to Ms. Whitson | 1,262.17 |
| 5/15/87 | attys for Richardson intervenor | 153,995.00 |
| | expenses | 17,853.53 |
| 6/12/87 | attys for McGinnis | 79,413.63 |
| | expenses | 5,214.00 |
| 6/15/88 | Mr. Barrett, counsel for Geier (agreed order, rate and number of hours undocumented) | 85,000.00 |
| | expenses | 5,000.00 |
| 11/13/87 | fees paid by USA for appeal to 6th Cir. | |
| | LDF ($150 per hr.) | 55,355.39 |
| | R. Dinkins ($125 per hr.) | 8,012.50 |
| | State of Tn attys ($65 to $125 per hr.) | 19,531.41 |
| | A. Arthur ($125 per hr.) | 3,983.51 |
| | John Norris ($90 per hr.) | 1,516.50 |
| | George Barrett ($150 per hr.) | 2,340.00 |

## COMMON FUND/COMMON BENEFIT METHOD

Counsel insist that the appropriate method of calculation of a reasonable fee award should be based on a "common fund/common benefit" consideration.

They first suggest that the "common benefit" exceeds $320,000,000. This number is calculated as follows:

$ 75,000,000—future implementation of the 2001 Consent Decree

$120,000,000—consisting of $8,000,000 per year since 1984 appropriated by the State to implement the 1984 Stipulation of Settlement

$125,000,000—spent on "Geier-related improvements to the TSU campus as a result of the Stipulation"

Based on this assertion of common benefit, counsel request a fee of $5,000,000 each for Mr. Barrett and Mr. Dinkins.

Even if an appropriate consideration, counsels' calculation of the "common benefit" is erroneous. It is obvious that $245,000,000 of the common benefit was obtained as a result of the 1984 Stipulation of Settlement for which counsel has already been paid as noted above.

■ There is no common fund as is the case where this method of fee calculation has been utilized. The requested extension of the doctrine of "common benefit" analysis is flawed in several respects.

First, counsel suggest that the doctrine is "based upon principles of fairness and unjust enrichment by not rewarding those who reap the substantial benefits of litigation without participating in its costs." (Plaintiff Memorandum at p. 19.) Again, "[t]he substantial benefit theory is based on the premise that persons directly benefiting from a lawsuit should share the legal expenses incurred by the named plaintiff to avoid unjust enrichment of the absent beneficiaries." *Id.* at 22. Counsel rightly suggest that not only the class members, but all citizens of the State of Tennessee are beneficiaries of the result obtained. *These same beneficiaries also share the costs incurred in the litigation.* Both the class members, named and unnamed, and

all the taxpayers of Tennessee are also the *payers* of the costs incurred. The same is true under the lodestar method of calculation. The fees paid will come from the public fisc, and all taxpayers will share both the benefits and the burdens of the litigation. Thus, there is no unjust enrichment unless excessive fees are awarded.

All counsel in this case performed as every lawyer should in every case, advancing their client's interest to the best of their ability. An excellent result was achieved and all counsel are to be highly commended. The contribution of the State Attorney General was especially admirable in his efforts and leadership to reach a settlement, fully supported by Governor Sundquist and the Legislative leadership. Counsel performed in the best traditions of our profession in reaching the 1984 and 2001 Consent Decrees.

The common benefit analysis is inapplicable and inappropriate to this case and is rejected by the Court. The only question before the Court is the determination of a reasonable fee for services rendered by the moving counsel.

*THE LODESTAR METHOD*

Fee shifting under 42 U.S.C. § 1988 is an exception to the "American Rule" by which parties ordinarily pay their own attorneys. This statute authorizes the award of a reasonable attorney fee to a prevailing party. "The primary concern in an attorney's fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Blum v. Stenson,* 465 U.S. 886, 893, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The lodestar method "remains the governing approach for cases governed by fee-shifting statutes." *In Re Cendant Corp. Litigation,* 264 F.3d 201, 256 (3rd Cir.2001). By this method, courts multiply a reasonable hourly rate by the

number of reasonable hours necessarily expended to achieve the results obtained. Once a lodestar is established, other considerations may lead the trial court to adjust the fee upwards or downward. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The lodestar method has consistently been used by this Court and throughout this Circuit in civil rights cases, and has been used to fix fees for both Mr. Barrett and Mr. Dinkins many times over. The Court will use the lodestar method in this case.

*REASONABLE HOURLY RATE*

■ To arrive at a reasonable hourly rate, courts use the prevailing market rate as a guideline. *Adcock–Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir.2000). "Prevailing market rate" is defined as the rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.[1] *Id.* The 6th Circuit has interpreted this to mean, in this instance, the Middle District of Tennessee:

> Thus, a renowned lawyer who customarily received $250 an hour in a field in which competent and experienced lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

*Id.* Competent and experienced lawyers in this district are paid $250 an hour for difficult civil rights cases. Gordon Bonnyman, Jr. is recognized as an outstanding practitioner in the field of civil rights litigation. He recently requested and received $250 per hour in the class action case of *Rosen, et al. v. Tennessee Comm'r of Finance* in this District. David Raybin, a published author of legal texts and a highly respected member of the bar of this Court, recently requested and received a fee of $250 per hour in the case of *Brian A. v. Sundquist.* In April of this year, Judge Walter Kurtz, in a thorough opinion pursuant to 42 U.S.C. § 1988, found $250 per hour to be a reasonable rate, and the prevailing market rate, for two lead lawyers in the class action case of *Harp, et al. v. Tn Dept of Human Services.* Mr. Richard Dinkins, one of the movants in this case, requested and received a fee of $200 per hour in the case of *Rural West Tennessee African American Affairs Council v. Sundquist* in the Jackson division of the Western District of Tennessee. His affidavit was filed December 9, 1998. Mr. Bonnyman, referenced above, requested and received a fee of $235 per hour in the Middle District of Tennessee case of *Grier v. Wadley*, a civil rights case. In May 2001, the ACLU, New York, and the ACLU Tennessee lawyers requested fees from $140 to $250 per hour in *Memphis Planned Parenthood v. Sundquist*, depending on the experience of participating lawyers. Barry Friedman, a professor at Vanderbilt Law School at the time, and now a professor at NYU, requested fees of

---

1. Dean Syverud of Vanderbilt University Law School filed an affidavit on behalf of Mr. Barrett's application in which he suggests that the "venue" should be a national standard for a small cadre of lawyers dealing competently with this type of civil rights cases. This Court respectfully disagrees. In 24 years on the bench, I have had numerous lawyers from all parts of the country, as well as locally, most of whom were competent to try a civil rights case. Complexity of issues is a factor in determining the lodestar and in the number of hours required, and in rare cases may justify an enhancement. However, comparison of prevailing rates in the venue of the trial court is the standard in this Circuit for fee shifting. Lawyers in different venues have different costs of living, different costs of overhead, salaries of assistants, rent, and different competitive pressures. A New York lawyer may negotiate a fee with a private client to come to Nashville to try a case. However, if he depends on the award of fees from the local court against his adversary, he should know that the shifted fee will be at Nashville rates.

$250 per hour in *Planned Parenthood of Middle Tennessee v. Sundquist* in December of 2000. The lawyers in *People First v. Clover Bottom* class action in this district were awarded fees of $195 per hour in January 2002. John Norris and James Weatherly, counsel for the McGinnis intervenors in this case, requested and received $250 per hour for their participation. This is not a complete listing, but it is very representative. My recollection is not what it once was, but I cannot recall ever awarding a fee in excess of $250 per hour. A court may consider "its own knowledge of the prevailing market rates and its previous determinations of a reasonable hourly rate . . . ." *Association for Retarded Citizens of Conn. Inc. v. Thorne, et al.*, 68 F.3d 547, 554 (2d Cir.1995); *Miele et al. v. N.Y. State Teamsters*, 831 F.2d 407, 409 (2d Cir.1987).

■ This Court therefore finds that the prevailing market rate that lawyers of comparable skill and experience can reasonably expect to command within the Middle District of Tennessee for this type of work is $250 per hour.

Counsel urges the Court to consider the *Johnson* factors, listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), either as bearing upon the lodestar amount or an enhancement thereof. These factors are (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases.

The Supreme Court, however, has limited the application of the *Johnson* factors. In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, the Court said:

> *Blum* also limited the factors which a district court may consider in determining whether to make adjustments to the lodestar amount. Expanding on our earlier finding in *Hensley* that many of the *Johnson* factors "are subsumed within the initial calculation" of the lodestar, we specifically held in *Blum* that the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. Although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain "rare" and "exceptional" cases, supported by both "specific evidence" on the record and detailed findings by the lower courts.

> A strong presumption that the lodestar figure—the product of reasonable hours times a reasonable rate—represents a "reasonable" fee is wholly consistent with the rationale behind the usual fee-shifting statute, including the one in the present case. These statutes were not designed as a form of economic relief to improve the financial lot of attorneys, nor were they intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client. Instead, the aim of such statutes was to enable private parties to obtain legal help in seeking redress for injuries resulting from the actual or

threatened violation of specific federal laws. Hence, if plaintiffs ... find it possible to engage a lawyer based on the statutory assurance that he will be paid a "reasonable fee," the purpose behind the fee-shifting statute has been satisfied.

Moreover, when an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance. **In short, the lodestar figure includes most, if not all, of the relevant factors constituting a "reasonable" attorney's fee, and it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.**

478 U.S. 546, 564–66, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (emphasis added) (citations omitted).

The one factor in *Johnson* that the Supreme Court felt may be still available is that of "risk." When the case was filed in 1968, there was substantial risk that the outcome might be unfavorable. Although *Brown v. Board* had been decided 14 years before, this case involved higher education and the law was unsettled. Risk was removed after Judge Gray's early decisions, and certainly was finally removed after the Stipulation of Settlement in 1984. Thereafter, the case only required monitoring for compliance. A flurry of activity in the case arose when the state sought dismissal

under the decision in *Fordice*. When Attorney General Paul Summers took office and indicated a desire to settle the case, and initiated mediation, good will and innovative efforts on the part of all counsel and parties resulted in the Consent Decree. Therefore, under the teaching of *Delaware Valley*, no enhancement is warranted and the Court fixes the lodestar at $250 per hour.

*THE NUMBER OF HOURS*

Mr. Barrett claims 1846.10 hours, but 832 of these are undocumented as to time, date or purpose. Mr. Dinkins has claimed 1572.4 hours of which 728 are undocumented. The State vigorously objects to payment for undocumented hours because the local rule and practice requires documentation, and further, it is unable to verify the necessity and reasonableness of the time spent, or to contest the same in this proceeding. For the same reasons, this Court is reluctant to order payment for undocumented hours. This Court knows both of these lawyers well. They are both fine lawyers, but it is not surprising to learn that they were not diligent in keeping time records. However, the Court is confident of their integrity and sincerity and will adjust for some of the undocumented hours.

■ The State objects to Mr. Dinkins' claim for fifty hours spent in public meetings around the state to inform the public about the Stipulation of Settlement. The State insists that these meetings were not mandated by the Stipulation, nor were they necessary to secure the final result obtained from the litigation. The Court disagrees. Much of the resistance to the Stipulation of Settlement came from the African–American community. To the Court's dismay and consternation, the former President of TSU, the President of the TSU student body, the TSU Alumni Association and others in the African–

American community made public statements opposing the Stipulation as it related to TSU, and some of which were reminiscent of the rhetoric of "separate but equal." Understanding of, appreciation of, and support for the Stipulation were essential to its implementation. These public meetings were with unnamed members of the class. The Court presumes and believes that the efforts of Mr. Dinkins and the LDF in this regard furthered the public interest and the goals of the Stipulation. The objection is overruled and these hours will be compensated for both Mr. Dinkins and the LDF.

The State also objects to thirty hours claimed by Mr. Dinkins for his time and efforts to resolve a student strike at TSU. The State acknowledges the value of Mr. Dinkins' efforts in this regard. The Court finds that these hours were spent in discussions with class members and, therefore, were the equivalent of meetings with clients. For the same considerations expressed above, these hours furthered the goals of the Stipulation and are properly chargeable.

The State also properly objects to the duplication of a fifteen-hour charge by Mr. Dinkins for preparation of the fee statement in November and December 2001 in that it is listed twice in the recapitulation of his fee statement. This is a proper objection and the same is sustained. One fifteen-hour charge of this preparation of the fee statement and research thereon is ample compensation for this function. Mr. Dinkins' request will be reduced by 15 hours.

Mr. Dinkins and Mr. Barrett request a minimum of one hour a week for the last 16 years of undocumented time devoted to this case. The Court concedes that this "guestimate" may even be a conservative one. A good lawyer thinks about an important case he is handling at odd hours of the day or night. Some of the most creative and important thoughts may occur in the middle of the night. However, it does not comply with the rules of court, it is impossible to prove if contemporaneous record is not made, and it is impossible for the Court or adversary counsel to evaluate or contest. For these reasons the Court finds it appropriate to reduce the undocumented hours by fifty percent (50%), and will award Mr. Dinkins 364 hours and Mr. Barrett 416 hours of undocumented time at the lodestar rate.

The Court has calculated Mr. Barrett's time records showing his hours totaling 1016.55. Mr. Phillip A. Purcell, an associate in Mr. Barrett's office, performed 133.05 hours. These hours were documented in 1993, 1994, 1995, and 1996. Mr. Purcell was admitted to the bar of this Court in 1991. Therefore, these hours will be compensated at the rate of $125 per hour for a total of $16,631.25 Also included in Mr. Barrett's time records are 5.25 hours by JC, a paralegal, 28.5 hours by TLM, a law clerk, and 16.7 hours by MAM, also a law clerk. Paralegal hours will be compensated at the rate of $75.00 per hour for a total of $393.75, and law clerk hours at $50 per hour for a total of $2260. The Court finds these rates to be reasonable in the Nashville market.

For all of the foregoing reasons, the Court awards Mr. Barrett a fee of $358,137.50 representing 1432.55 hours at $250 per hour. The Court awards Mr. Dinkins a fee of $298,350 representing 1193.4 hours at $250 per hour. The Court awards to the firm of Barrett, Johnston and Parsley the sum of $16,631.25 for the work of Mr. Purcell, $1425 for the time of law clerk TAM, $835 for the work of law clerk MAM, and $393.75 for the time of JC, paralegal.

*LAWYERS FOR THE LEGAL DE-FENSE FUND*

Mr. Norman Chachkin has submitted time records for 21.6 hours, Mr. David Goldberg has submitted time records for 57.3 hours, and Mr. Victor Bolden has submitted time records for 84.6 hours. Additional time spent by other experienced lawyers at LDF amounts to 66.5 hours or a total of 230 hours which will be compensated at the lodestar rate of $250 per hour for a total of $57,500. Ms. Melissa Woods was only admitted to the bar in the summer of 1998. Her work was performed when she had two years or less of experience. The Court finds that a fee of $125 per hour for her recorded time of 106.10 hours for a total of $13,262.50 is reasonable for a person of her experience in the Nashville market. The itemized costs of the LDF in the amount of $22,212.35 is found reasonable and is awarded.

This Memorandum Opinion represents a final order in the matter from which an appeal may lie.

IT IS SO ORDERED.