RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0245p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ARTHUR LAVIN; JASON CHAO; MICHAEL W. DEVEREAUX; PATRICIA J. KELLNER; JEROME LIEBMAN, ERIC R. SCHREIBER; CONSTANCE D. MAGOULIAS; PETER A. DEGOLIA; NATHAN A. BEACHY,

   *Plaintiffs-Appellants*,

  *v.*

JON HUSTED, in his Official Capacity as Ohio Secretary of State,

   *Defendant-Appellee*,

RICHARD MICHAEL DEWINE; J.B. HADDEN; MIKE DEWINE FOR OHIO,

   *Intervenors*,

THE OHIO STATE MEDICAL ASSOCIATION; OHIO OSTEOPATHIC ASSOCIATION; THE ACADEMY OF MEDICINE OF CLEVELAND & NORTHERN OHIO,

   *Amici Curiae*.

No. 11-3908

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:10-cv-1986—Donald C. Nugent, District Judge.

Argued: July 25, 2012

Decided and Filed:  August 3, 2012

Before:  DAUGHTREY, KETHLEDGE, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Subodh Chandra, THE CHANDRA LAW FIRM, LLC, Cleveland, Ohio, for Appellants.  Richard N. Coglianese, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:** Subodh Chandra, Donald P. Screen, Sandhya Gupta, THE CHANDRA LAW FIRM, LLC, Cleveland, Ohio, Raymond V. Vasvari, Jr., BERKMAN, GORDON, MURRAY & DEVAN, Cleveland, Ohio, for

1

Appellants.  Richard N. Coglianese, Michael J. Schuler, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. James A. King, PORTER WRIGHT MORRIS & ARTHUR LLP, Columbus, Ohio, for Intervenors.  Maureen P. Tracey, Diane E. Citrino, THACKER MARTINSEK, LPA, Cleveland, Ohio, for Amici Curiae.

_____

**OPINION**

_____

KETHLEDGE, Circuit Judge.  An Ohio statute makes it a crime for state Attorney-General or county-prosecutor candidates to accept campaign contributions from Medicaid providers or any person with an ownership interest in a Medicaid provider. *See* Ohio Rev. Code § 3599.45.  The plaintiff physicians here are all Medicaid providers who attempted to contribute to Richard Cordray's 2010 campaign for reelection as Ohio Attorney General.  When the campaign learned that the plaintiffs were Medicaid providers, however, it refused to accept their contributions, citing Ohio law.

The plaintiffs brought this lawsuit against Ohio's Secretary of State on September 3, 2010, claiming that § 3599.45 is unconstitutional, and seeking declaratory and injunctive relief.  After discovery, both sides moved for summary judgment. On July 22, 2011, the district court denied the plaintiffs' motion and granted the Secretary's motion.  The court reasoned that § 3599.45 was supported by a general interest in "preventing corruption" and that the court should not "second guess" the Ohio Legislature's means of furthering that interest.  This appeal followed.

The Secretary's first argument on appeal—and indeed, almost his primary one—is that the plaintiffs lack standing to bring this suit.  To have standing, the plaintiffs must have suffered (i) an injury in fact that is (ii) fairly traceable to the statute and (iii) redressable by a favorable decision. *Fednav, Ltd. v. Chester*, 547 F.3d 607, 614 (6th Cir. 2008).  Although the Secretary contests the first two elements in his brief, he abandoned those arguments at oral argument.  And for good reason:  the plaintiffs suffered cognizable harm under the First Amendment when the Cordray campaign

refused their campaign contributions, *see Buckley v. Valeo*, 424 U.S. 1, 22 (1976); and that refusal was plainly traceable to the statute challenged here.

The Secretary argues, however, that the plaintiffs' injury—their inability to make campaign contributions because of § 3599.45—is not redressable in a lawsuit against the Secretary in particular. The argument is that the plaintiffs have chosen the wrong defendant: only the Ohio Attorney General or local Ohio prosecutors can bring criminal charges for violations of § 3599.45, so the Secretary contends that a lawsuit against him cannot bring the plaintiffs any relief. But the Secretary does, in fact, have a meaningful role in the statute's enforcement. The Secretary is Ohio's "chief election officer" and must "investigate the administration of election laws . . . and report violations of election laws to the attorney general or prosecuting attorney, or both, for prosecution." Ohio Rev. Code §§ 3501.04, 3501.05(N)(1). Relatedly, he has the power to "administer oaths, issue subpoenas, summon witnesses, compel the production of . . . evidence, and fix the time and place for hearing any matters relating to the administration and enforcement of the election laws." *Id.* § 3501.05(DD). An injunction disabling the Secretary from doing any of these things in connection with § 3599.45 would bring these plaintiffs meaningful if not total relief; and a concomitant declaration that the statute is unconstitutional would handle the rest. The Secretary's redressability argument is without merit.

That does leave the lingering question whether this case is moot, since the plaintiffs sought to contribute to a 2010 campaign that is now over. We conclude, however, that this case fits "within the established exception to mootness for disputes capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal quotation marks and brackets omitted). Both of these conditions are satisfied here: the plaintiffs could not fully litigate their claims before the end of the 2010 election cycle, and they

have otherwise made clear that they wish to make the same kinds of contributions in future cycles. *Cf. Carey v. Wolnitzek*, 614 F.3d 189, 197 (6th Cir. 2010) (suit brought by a candidate in prior election not moot); *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 650 (9th Cir. 2007) ("election cases tend to fall within [the 'capable of repetition, yet evading review'] exception"). We therefore have jurisdiction to decide this case. *See Wis. Right to Life*, 551 U.S. at 464.

Contribution limits "implicate fundamental First Amendment interests, namely, the freedoms of political expression and political association." *Randall v. Sorrell*, 548 U.S. 230, 246 (2006) (plurality opinion) (internal quotation marks omitted); *see also Buckley*, 424 U.S. at 14–15. Consequently, contribution limits are permissible only if "the Government demonstrates that the limits are 'closely drawn' to match a 'sufficiently important interest.'" *Randall*, 548 U.S. at 247 (quoting *Buckley*, 424 U.S. at 25). We review de novo the district court's determination that the Secretary has made this showing with respect to § 3599.45. *Citizens for Tax Reform v. Deters*, 518 F.3d 375, 379 (6th Cir. 2008).

The Secretary's theory in support of the challenged contribution ban is that § 3599.45 prevents corruption. That interest, of course, is one that the courts have recognized as important. *See, e.g.*, *Buckley*, 424 U.S. at 25–26. But to demonstrate that a contribution limit furthers an interest important enough to suppress "the freedoms of political expression and political association[,]" *Randall*, 548 U.S. at 246 (internal quotation marks omitted), a state must do more than merely *recite* a general interest in preventing corruption. What *Buckley* requires is a demonstration, not a recitation.

What the state must do, instead, is demonstrate *how* its contribution ban furthers a sufficiently important interest. The State of Connecticut made this demonstration in *Green Party of Connecticut v. Garfield*, 616 F.3d 189 (2d Cir. 2010). At issue there was Connecticut's ban on campaign contributions from state contractors to candidates for state office (among other challenged provisions). The ban was enacted "in response to a series of scandals in which contractors illegally offered bribes, 'kick-backs,' and campaign contributions to state officials in exchange for contracts with the state." *Id.*

at 200. One of those scandals landed the State's Governor in prison. *Id*. It was easy, then, for the State to demonstrate how its ban on contributions from contractors would help bring such scandals to an end. *See id.*

We have nothing of that sort here. When pressed to explain how § 3599.45 furthers the State's interest in preventing corruption, the Secretary says that prosecutors have considerable discretion about whom to prosecute, that Medicaid fraud is a problem in Ohio (as it is elsewhere), and that, if prosecutors are permitted to accept contributions from Medicaid providers, they might choose not to prosecute contributor-providers that commit fraud. But the Secretary concedes that he has no evidence that prosecutors in Ohio, or any other state for that matter, have abused their discretion in this fashion. Indeed the Secretary concedes that he has no evidence at all in support of his theory that § 3599.45 prevents actual or perceived corruption among prosecutors in Ohio. Meanwhile, the plaintiffs have evidence showing the contrary, in the form of affidavits from three former Ohio Attorneys General, each of whom says that "decision making in the Attorney General's office regarding Medicaid fraud would not have been influenced by my campaign committee's receipt of campaign contributions from individual Medicaid providers or those with ownership interests in them." (Petro Declaration at ¶ 5; Fisher Declaration at ¶ 5; Dann Declaration at ¶ 7.) The Secretary's claim that § 3599.45 prevents corruption, therefore, is dubious at best.

What is even more clear, however, is that the contribution ban is not closely drawn. To be closely drawn, a law restricting campaign contributions must "avoid unnecessary abridgement of associational freedoms." *Buckley*, 424 U.S. at 25. Here, as discussed above, the theory behind § 3599.45 is that the Attorney General and county prosecutors might choose not to prosecute campaign contributors who commit Medicaid fraud. But even if we were to accept this theory at face value, the ban is vastly more restrictive than necessary to achieve its stated goal. According to the State's own statistics, there were over 93,000 Medicaid providers in Ohio in July 2009. That same year, Ohio investigated 316 reports of Medicaid fraud, prosecuted 97 people for Medicaid fraud, convicted 68, and completed 21 civil settlements. Which is to say that,

in a one year period, only .003% of Ohio's Medicaid providers—or 316 of them—were implicated in Medicaid fraud.  And yet § 3599.45 prevents all 93,000 of Ohio's Medicaid providers from contributing to candidates for Attorney General or county prosecutor.  Based on the numbers alone, therefore, the ban restricts "fundamental First Amendment interests," *id.* at 23, much more broadly than necessary.  And that is true even without considering the statute's ban on contributions from "any person having an ownership interest in" a Medicaid provider.  Ohio Rev. Code  § 3599.45.

It is not hard to imagine what a less restrictive ban might look like.  Such a ban might permit contributions from Medicaid providers with clean records, but ban them from providers penalized civilly for billing violations, *see* Ohio Rev. Code § 5111.03, or convicted criminally of Medicaid fraud under any state or federal law. *See, e.g.*, Ohio Rev. Code § 2913.40.  And of course Ohio could have taken a qualitatively less restrictive approach, by limiting campaign contributions from Medicaid providers rather than banning them. *See Green Party*, 616 F.3d at 206 ("an outright ban on contributions is a drastic measure").

We are mindful, of course, that the "closely drawn" standard is not a strict-scrutiny standard.  Legislators have some latitude in determining how to craft limits on campaign contributions, given that, as an empirical matter, courts are without a "scalpel to probe" where the contours of a minimally restrictive limit might lie.  *Buckley*, 424 U.S. at 30.  But neither can we stand by while the patient is euthanized.  The statute here restricts the First Amendment rights of nearly 100,000 Medicaid providers who do not commit fraud, based on an attenuated concern about a relative handful of providers who do.  There is no avoiding the conclusion that the contribution ban set forth in § 3599.45 is not closely drawn.  The ban is therefore unconstitutional.

*          *          *

The district's court's judgment is reversed, and the case remanded with instructions to enter judgment for the plaintiffs.