RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0224p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ARTHUR LAVIN; JASON CHAO; MICHAEL W. DEVEREAUX; PATRICIA J. KELLNER; JEROME LIEBMAN; ERIC R. SCHREIBER; CONSTANCE D. MARGOULIAS; PETER A. DEGOLIA; NATHAN A. BEACHY,

     *Plaintiffs-Appellants*,

     *v.*

JON HUSTED, in his official capacity as Ohio Secretary of State,

     *Defendant-Appellee*.

No. 13-3838

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:10-cv-01986—Donald C. Nugent, District Judge.

Argued: June 18, 2014

Decided and Filed: September 4, 2014

Before: SILER, GILMAN, and GIBBONS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Subodh Chandra, THE CHANDRA LAW FIRM, LLC, Cleveland, Ohio, for Appellants. Kristopher J. Armstrong, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Subodh Chandra, Donald P. Screen, Sandhya Gupta, Ashlie Case Sletvold, THE CHANDRA LAW FIRM, LLC, Cleveland, Ohio, for Appellants. Richard N. Coglianese, Ryan L. Richardson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. Jennifer L. Branch, Alphonse A. Gerhardstein, GERHARDSTEIN & BRANCH CO. LPA, Cincinnati, Ohio, for Amici Curiae.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.   After two years of litigation, including one previous trip to this court, plaintiffs appeal the district court's award of attorneys' fees under 42 U.S.C. § 1988.  Specifically, plaintiffs appeal the district court's reduction of their fees, arguing that it abused its discretion by relying on several considerations irrelevant to, and inconsistent with, the § 1988 inquiry.   Plaintiffs also contend that the district court's language was antagonistic and shows that the court was biased against them.   Plaintiffs therefore ask for reassignment on remand.   For the following reasons, we vacate the district court's award of attorneys' fees and remand for recalculation of fees before a different district judge.

**I.**

Plaintiffs are physicians and Ohio Medicaid providers who wanted to support various candidates running for Ohio Attorney General and Cuyahoga County Prosecutor in the 2010 election, but were barred from doing so by an Ohio statute.  *See* Ohio Rev. Code § 3599.45 (limiting campaign contributions from Medicaid providers).  They sued in federal court, arguing that this statute was unconstitutional on its face under the First and Fourteenth Amendments.

The district court twice determined that the plaintiffs' position was wrong—first on plaintiffs' motion for a preliminary injunction and again on summary judgment.  Plaintiffs appealed, and this court unanimously reversed.  *See Lavin v. Husted*, 689 F.3d 543 (6th Cir. 2012).  Holding that the statute's unconstitutionality was "clear" and "unavoidable," this court remanded with instructions to enter judgment for the plaintiffs.  *See id.* at 548.  The district court then entered a permanent injunction preventing the defendant from enforcing the statute against candidates or plaintiffs.

Plaintiffs moved for attorneys' fees and costs under 42 U.S.C. § 1988.  They sought a total of $665,645.68, divided among The Chandra Law Firm LLC, as lead counsel, and various other law firms and lawyers acting in advisory roles.  The motion first went to a magistrate judge, who recommended that plaintiffs be awarded a total of $454,635.53 in fees and $6,442.03

in costs. This award would have reduced plaintiffs' overall request by about thirty percent. Among the magistrate judge's reductions were a $100,183 reduction for investigatory work performed before plaintiffs signed a fee agreement; a twenty-five percent across-the-board reduction on discovery fees; and a twenty-five percent across-the-board reduction on appellate fees. Plaintiffs did not object to the magistrate judge's reduction of their discovery fees but challenged most other aspects of the decision.

After review, the district court awarded only $128,908.74 in fees and $6,315.00 in costs—an amount seventy percent less than the magistrate judge's recommendation and eighty percent less than plaintiffs' original request. In doing so, the district court accepted some of the magistrate judge's suggested reductions and rejected others as insufficient. The district court then drastically cut hourly rates, struck additional hours spent on third-party discovery and other miscellaneous matters, and reduced appellate hours by fifty percent. After arriving at its lodestar calculation, the district court further reduced the fees by thirty-five percent under the *Johnson* factors. *See Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

Throughout the opinion, the district court's view of plaintiffs and their lawyers is apparent. The district court repeatedly expressed concern that the "taxpayers will ultimately bear the burden of any fee award [while] the named Plaintiffs are medical doctors presumably abundantly capable of paying for representation." And the court was frustrated by the thought that "this action was derived mainly by counsel in order to garner fees and not from Plaintiffs' frustrated desire to make a campaign contribution." Compounding the court's frustration was its belief that plaintiffs' attorneys charged too much for what the court thought was a relatively straightforward case. Unhappy with the high fee request from "Plaintiffs [who] are not the typical civil rights Plaintiffs," the district court compared the plaintiffs' civil rights attorneys to attorneys who accept court appointments in criminal cases, commenting that:

> The contrast between these cases which may literally mean the difference between life and death, the most thorough deprivation of freedom sanctioned under the law, and the instant case is as stark a difference as black and white or good and evil. It is unfathomable to think that a persons' [sic] life and liberty can be defended at a total cost, including appeals, of under $17,000.00, while the attorneys in this case have sought in excess of $660,000.00 from the government

for a facial challenge to a thirty year old law that was enacted to prevent corruption in election campaigns.

Plaintiffs appeal, arguing that the district court abused its discretion. Plaintiffs also ask for reassignment on remand.

## II.

42 U.S.C. § 1988 authorizes a district court "in its discretion" to award reasonable attorneys' fees to prevailing parties in civil rights litigation. Given "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters," we afford a substantial degree of deference to the district court's determination of what constitutes a reasonable fee award. *Hensley*, 461 U.S. at 437. "'An abuse of discretion exists when the district court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Geier v. Sundquist*, 372 F.3d 784, 789–90 (6th Cir. 2004) (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)). We may also find an abuse of discretion when we are "'firmly convinced that a mistake has been made.'" *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

"The primary concern in an attorney fee case is that the fee awarded be reasonable." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). The award should be "adequately compensatory to attract competent counsel," but also "avoid[] producing a windfall for lawyers." *Adcock-Ladd*, 227 F.3d at 349. In calculating a reasonable attorney fee, the trial court should first determine the fee applicant's "'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Id.* (citing *Hensley*, 461 U.S. at 433). "The trial judge may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation." *Id.* (citing *Reed*, 179 F.3d at 471–72). In performing its post-lodestar analysis, the court may consider the twelve factors listed in *Johnson*. *See Adcock-Ladd*, 227 F.3d at 349 (citing *Hensley*, 461 U.S. at 434 n.9).

Plaintiffs argue on appeal that the district court erred in almost every part of its fee calculation.  For example, plaintiffs contend that there is no basis for the district court's decision to cut *all* hours spent on the case before the official fee agreement was signed.  Citing cases holding that specific fee agreements should not factor into the district court's analysis, plaintiffs argue that they should receive reasonable fees for their counsel's work in drafting the complaint and motion for a preliminary injunction—all of which happened before the fee agreement was signed.[1]  *See Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989); *Cox v. Shelby State Cmty. Coll.*, 194 F. App'x 267, 278 (6th Cir. 2006) ("Section 1988 does not limit fee awards to work performed after the complaint is filed, but allows recovery of fees for time spent beforehand investigating the facts and researching the viability of potential legal claims." (citing *Webb v. Dyer Cnty. Bd. of Educ.*, 471 U.S. 234, 250 (1985) (Brennan, J., concurring in part and dissenting in part))).

Plaintiffs also argue that the district court's discovery reductions are problematic.  In slashing plaintiffs' fees for discovery, the district court remarked that "[a] facial attack challenges the statute without regard to the underlying facts of any individual's case and without need for discovery as to how the statute was applied in any particular case."  But, as plaintiffs point out, they brought an overbreadth challenge and therefore bore "the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (alteration in original) (quoting *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)).  And plaintiffs correctly recognize that it is not just overbreadth claims that implicate factual issues requiring discovery.  Constitutional questions do not exist in a factual vacuum, particularly First Amendment questions, which frequently require plaintiffs to show chill.

We agree with plaintiffs that these, and possibly other, individual determinations by the district court are wrong.  But it is not the task of this court to analyze each deduction line-by-line. *See Hensley*, 461 U.S. at 437.  And even if we were so inclined, we could not perform a detailed

---

[1]In support of the district court's holding, defendant relies solely on the fact that the Ohio Rules for Professional Conduct require a contingency fee agreement to be in writing.  But, significantly, the Rule does not require that the contingency fee agreement be signed before the start of the attorney-client relationship. *See* Ohio Rule of Prof'l Conduct 1.5(c)(1).  Nor does it say that any fees incurred before the signing of an agreement are not recoverable. *See id.*

analysis of the district court's fee calculation because the district court relied on several impermissible considerations that so permeate the opinion that appellate review of any one individual determination is impossible. *Cf. United States v. Musgrave*, --- F.3d ----, 2014 WL 3746811, at *5 (6th Cir. 2014) (holding that the district court abused its discretion when "[i]mpermissible considerations permeated [its] justification" for a defendant's sentence).

For example, the district court repeatedly expressed a preference for awarding fees "on behalf of plaintiffs who could not otherwise afford to pay an attorney," but against fees for the plaintiffs here, who were "presumably abundantly capable of paying for representation." A plaintiff's ability to pay his or her attorney, however, is irrelevant to the fee inquiry. Section 1988 does not provide—or even express a preference—for "plaintiffs who could not otherwise afford to pay an attorney." *Blanchard*, 489 U.S. at 94 "Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of this provision." *Id.*; *see also Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1285 (9th Cir. 2004); *Milwe v. Cavuoto*, 653 F.2d 80, 83 (2d Cir. 1981). Therefore, the district court's antagonism toward plaintiffs' "atypicality" was not a valid reason for reducing their attorneys' fees.

The district court also felt it was "imperative" to review plaintiffs' fee request—which would "ultimately be borne by the taxpayer"—with a "renewed level of scrutiny." But consideration of the taxpayers is "an improper ground for denying or reducing an attorney's fee." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994); *see also, e.g.*, *Johnson v. Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979); *Criterion Club of Albany v. Bd. of Comm'rs of Dougherty Cnty.*, 594 F.2d 118, 120 (5th Cir. 1979). "The purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94-1558).

Nothing in the statute suggests that the incentive to ferret out civil rights violations, provided by the prospect of attorneys' fee, should be any less when the fees come from tax revenues. *See Copeland v. Marshall*, 641 F.2d 880, 895 (D.C. Cir. 1980) (discussing fee-shifting in the context of Title VII). Moreover, reducing fees in light of their possible burden on taxpayers ignores the fact that the taxpayers themselves benefit from the successful lawsuit. *See Am. Booksellers Ass'n, Inc. v. Virginia*, 802 F.2d 691, 697 (4th Cir. 1986). While the exact

number of taxpayers who directly benefit from any given civil rights action will vary,[2] all taxpayers indirectly benefit from the redress and elimination of unconstitutional statutes and practices. In this way, civil rights plaintiffs function as "'private attorney[s] general,' vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)).

The district court's aversion toward plaintiffs' wealth and its emphasis on the taxpayer burden appear throughout the opinion. For example, the district court referenced these concerns in its general discussion of § 1988, in its determination of the lodestar amount, and in its post-lodestar analysis. But the district court did not expressly base any of its reductions on these considerations. In fact, the district court gave many other reasons for each reduction at each stage of the calculation. We cannot ascertain what part these considerations played, if any, in the district court's specific reductions. Given the drastic cut in fees and the pervasiveness of the views, it is apparent that the district court was significantly motivated by these improper considerations. It is also possible that these impermissible considerations caused the district court to weigh permissible factors improperly, placing excessive weight on factors that favored a lesser fee award while minimizing or even ignoring factors that favored a higher award. *See Hensley*, 461 U.S. at 437 (requiring district courts to provide a "clear" explanation of their reasoning in fee disputes to foster appellate review); *cf. United States v. Bistline*, 720 F.3d 631, 634 (6th Cir. 2013) (holding that the district court's heavy reliance on unremarkable factors during sentencing was an abuse of discretion). Because the district court abused its discretion, plaintiffs are entitled to a new calculation.

## III.

For similar reasons, we also grant plaintiffs' request for reassignment on remand. "This Court possesses the power, under appropriate circumstances, to order the reassignment of a case on remand pursuant to 28 U.S.C. § 2106." *Rorrer v. City of Stow*, 743 F.3d 1025, 1049 (6th Cir. 2014) (citing *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 580 (6th Cir. 2013)). To determine whether reassignment is necessary, we consider:

---

[2]For example, in this case, "the First Amendment rights of nearly 100,000 Medicaid providers" in Ohio were vindicated by plaintiffs' lawsuit. *See Lavin*, 689 F.3d at 548.

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* (quoting *U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532–33 (6th Cir. 2012)). An extraordinary power, reassignment "'should be rarely invoked.'" *Id.* (quoting *Renal Care Grp.*, 696 F.3d at 533).

As discussed above, the district court's opinion reflects a distinct hostility toward the plaintiffs because they were wealthy doctors challenging a thirty-year-old campaign finance law. This language—repeated over and over in the opinion—creates the appearance that the district court was biased against plaintiffs. *See Rorrer*, 743 F.3d at 1050 (holding that the district court judge's antagonistic statements "indicate[d] that allowing the same district judge to preside . . . would compromise 'the appearance of justice'" (quoting *Renal Care Grp.*, 696 F.3d at 532)); *John B. v. Goetz*, 626 F.3d 356, 364 (6th Cir. 2010) (reassigning the case when the "the orders issued by the district court . . . contain[ed] increasingly accusatory language directed at the defendants"); *United States v. Hagby*, 20 F. App'x 299, 300 (6th Cir. 2001) (reassigning the case after the district court "forcefully expressed her dislike of drugs" at a defendant's sentencing).

The district court also was skeptical about plaintiffs' and their counsel's true motives in the litigation. It snidely remarked that "counsel was merely scouring through campaign laws hoping to find an old one such as the statute at issue here to challenge in the hope of raking in overstated fees." But the district court had no evidence of any unseemly intent. And even if the possibility of fees motivated the lawsuit, "Congress intended that attorneys would file suits, which otherwise would not have been brought, simply because fees were available under § 1988." *See Gekas v. Attorney Registration & Disciplinary Comm'n of the Supreme Court of Ill.*, 793 F.2d 846, 853 (7th Cir. 1986). For these reasons, we conclude that the appearance of justice would best be preserved by reassignment.

We acknowledge that this case concerns a fee application ending two years of litigation in front of a judge who is intimately familiar with the facts. We emphasize, however, that fee cases are as worthy of reassignment as those on the merits. Section 1988 plays an important role

in civil rights litigation. *See Blanchard*, 489 U.S. at 96 ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large . . . ."). And litigants deserve a fair judge—and the appearance of one—no matter what the dispute. As far as reassignment is concerned, outside of the billing records attached to the fee motion, the case's history is relatively uncomplicated and short. Furthermore, a new judge would have the benefit of the magistrate judge's opinion, which streamlines the issues. *See Rorrer*, 743 F.3d at 1051. We therefore grant plaintiffs' request for reassignment to a different district judge on remand in order to avoid the appearance of partiality.

**IV.**

For the above reasons, we vacate the district court's award of attorneys' fees and remand for recalculation by a different judge.