**In re JOHN RICHARDS HOMES BUILDING CO., LLC, Former Putative Debtor.**

No. 02–54689.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Signed Dec. 18, 2014.

84

Norman C. Ankers, Robert B. Weiss, Arthur O'Reilly, Judy B. Calton, Honigman Miller Schwartz & Cohn LLP, Detroit, MI, Jamie Warrow, Kickham Hanley PLLC, Gregory D. Hanley, Royal Oak, MI, Martha J. Olijnyk, Rochester, MI, Mark H. Shapiro, Southfield, MI, for Debtor.

***ORDER: (1) GRANTING IN PART AND DENYING IN PART JOHN RICHARDS HOMES BUILDING CO., LLC'S MOTION FOR AN ADDITIONAL AWARD OF ATTORNEY FEES AND COSTS AND FOR AN AWARD OF PREJUDGMENT INTEREST (DKT. NO. 1278); AND, (2) DENYING JOHN RICHARDS HOMES BUILDING CO., LLC'S MOTION TO REINSTATE THE 2011 PUNITIVE DAMAGES AWARD OR, IN THE ALTERNATIVE, REFER THE PUNITIVE DAMAGES REQUEST TO THE DISTRICT COURT (DKT. NO. 1283)***

MARK A. RANDON, Bankruptcy Judge.

## I. INTRODUCTION

More than twelve years have passed since Kevin Adell wrongfully filed an invol-

untary bankruptcy petition against John Richards Homes Building Co., LLC ("JRH"). The filing succeeded in destroying JRH's business. But Adell's victory. was pyrrhic: his petition and post-filing misconduct resulted in judgments against him totaling $8.5 million in compensatory damages, punitive damages, attorney fees, and postjudgment interest; forced him to seek personal bankruptcy protection in Florida; and, embroiled him in years of self-financed litigation—far beyond the month-long duration of his improvidently filed petition.

Dissatisfied with the $8.5 million Adell has already paid, JRH moves to: (1) receive an additional $864,000.00 attorney fees and costs award; (2) obtain prejudgment interest of $1.37 million on its prior fees and costs award; and, (3) have an additional $2.8 million punitive damage award—recently rejected by the Sixth Circuit Court of Appeals as improper under 11 U.S.C. § 105(a) and the Court's inherent authority—revived as a punitive damage award under 11 U.S.C. § 303(i), or referred to the district court. JRH's motions are fully briefed. The Court heard argument on September 15, 2014; it then required the parties' dispute mediated, which was unsuccessful.

For the reasons discussed below, the Court orders Adell to pay JRH a final attorney fee of $20,000.00. In all other respects, JRH's motions are without merit and **DENIED.**

## II. PROCEDURAL HISTORY

The Court highlights the case history, which has been adequately summarized in previous opinions. *See e.g., In re John Richards Homes Bldg. Co., LLC,* 475 B.R. 585 (E.D.Mich. July 16, 2012).

Because Adell's involuntary Chapter 7 bankruptcy petition against JRH was filed in bad faith, his conduct deemed "reprehensible," and the petition an "extreme case of abuse of the bankruptcy process," in 2003, the Michigan bankruptcy court entered a judgment against him and in favor of JRH for $6.4 million under 11 U.S.C. § 303(i): $4.1 million in compensatory damages, $2 million in punitive damages, and $313,230.68 in attorney fees and costs. The bankruptcy court's judgment was affirmed by the United States District Court for the Eastern District of Michigan and the Sixth Circuit. After his efforts to seek personal bankruptcy protection in Florida failed, Adell finally paid the judgment with postjudgment interest in 2006.

Within days of Adell's payment, JRH's counsel, Honigman Miller Schwartz and Cohn ("Honigman"), filed a second fee application for postjudgment services under section 303(i), and JRH moved for additional punitive damages based on Adell's postjudgment conduct—this time based on 11 U.S.C. § 105(a) and the court's inherent authority.[1] On October 27, 2011, the bankruptcy court awarded Honigman an additional $1.8 million in attorney fees and costs for services rendered between January 15, 2003 and September 24, 2009; JRH was awarded an additional $2.8 million in punitive damages (collectively, "the 2011 Fee and Cost Award"). Significantly, the court awarded JRH additional punitive damages—under section 105(a) or its inherent authority—for Adell's "unnecessary and abusive bankruptcy filing," finding *"for the most part,* the record support[ed] the facts on which JRH's motion . . . [was] based." (Emphasis added).

To maintain the status quo pending appeal, Adell deposited $5,119,612.00 (the 2011 Fee and Cost Award, plus 10 percent)

---

**1.** Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

into a court registry interest-bearing account ("registry account") and obtained a stay through certiorari review of the United States Supreme Court ("November 2011 Stay Order").

On appeal, the district court affirmed Honigman's award of attorney fees, but reversed the bankruptcy court's award of punitive damages; on cross appeal, the Sixth Circuit affirmed the order of the district court holding, with respect to JRH's additional $2.8 million punitive damages claim, that:

> bankruptcy courts do not have a general statutory power to impose serious noncompensatory punitive damages. While § 105(a) establishes some punitive sanction power, that power is limited to sanctions that are necessary or appropriate to enforce the Bankruptcy Code. Additionally, § 105(a) is prospective rather than retrospective; as such, that provision is best read not to encompass a power to award criminal-like punitive sanctions. Therefore, while § 105(a) grants bankruptcy courts the authority to award mild noncompensatory punitive damages, it does not provide a basis for awarding serious noncompensatory punitive damages. There is no other statutory basis for such an award.

> \* \* \*

> Likewise, no other circuit has found that bankruptcy courts have a broad, inherent power to impose substantial noncompensatory punitive sanctions.

*In re John Richards Homes Bldg. Co., L.L.C.*, 552 Fed.Appx. 401, 415 (6th Cir. 2013) cert. denied sub nom. *Adell v. John Richards Home Bldg. Co.*, — U.S. —, 134 S.Ct. 2136, 188 L.Ed.2d 1125 (2014) (internal citations omitted).

On May 5, 2014, the United States Supreme Court denied certiorari review.

Thus, only Honigman's attorney fee award survived appeal.

Because there was a final adjudication of the 2011 Fee and Cost Award, the Bankruptcy Court Clerk was ordered to: (1) immediately disburse to Honigman $1,859,812.59 from the registry account; and, (2) immediately disburse to Adell the remaining amount, including accrued interest.

The pending motions followed.

## III. ANALYSIS

### A. *JRH is Entitled to a Modest Award of Additional Attorney Fees*

JRH requests approximately $864,000.00 in additional attorney fees it claims to have paid Honigman for services rendered between September 25, 2009 and May 1, 2014. It argues that a substantial portion of these fees were incurred in obtaining—and then defending Adell's appeals of—Honigman's $1.8 million cost and fee award. But these fees also include amounts JRH paid Honigman to obtain its $2.8 million punitive damage award in the bankruptcy court—and to pursue *its* appeal of the district court's reversal of that award. Without reviewing all of Honigman's relevant detailed billings,[2] the precise allocation of the $864,000.00 in fees (between Honigman's successful fee claim—under section 303(I)—and JRH's ultimately unsuccessful additional punitive damages claim—under section 105(a) or the court's inherent authority) cannot be made with any degree of certainty.

JRH does not see this as a problem. It argues that it pursued both claims and they were sufficiently related to permit a full recovery. JRH therefore urges the Court to either award it the entire

---

**2.** Some of the bills were provided with JRH's motion.

$864,000.00 or, alternatively, make a modest equitable adjustment because it did not prevail on the punitive damage award. Neither request is appropriate.

■ Section 105(a) does not authorize an award of attorney fees in the absence of an underlying sanctionable conduct. That is, while a bankruptcy court's power under section 105(a) may include an assessment of attorney fees, *see e.g., In re Mehlhose,* 469 B.R. 694, 711 (Bankr.E.D.Mich.2012), a fee award for pursuit of a sanction the bankruptcy court had no authority to impose is not permitted.[3] Nor does the plain language of section 303 even imply that section 303(i)(1)(B) attorney fees may be awarded in conjunction with a sanction sought under a separate code provision or the court's inherent power: JRH provides no supporting authority for such an extension; the Court finds none. There is no basis to award attorney fees for *any* portion of JRH's unsuccessful pursuit of additional punitive damages.

■ Section 303(i) does, however, permit the discretionary award of so-called "fees on fees": those incurred by the debtor in pursuing its claims for attorney fees under section 303(i)(1). *In re S. California Sunbelt Developers, Inc.,* 608 F.3d 456, 463 (9th Cir.2010) (section 303(i) permits an award of fees on fees); *DVI Receivables XIV, LLC v. Rosenberg,* 500 B.R. 174, 183–84 (S.D.Fla.2013) (same). The Sixth Circuit has determined that "[g]iven the similar concern and congressional intent behind § 1988 and § 303(i), it is consistent with congressional intent to apply the principles underlying § 1988 to

§ 303(i)." *In re John Richards Homes Bldg. Co.,* 552 Fed.Appx. at 411. And, 42 U.S.C. § 1988 permits the recovery of fees on fees. *Lamar Adver. Co. v. Charter Tp. of Van Buren,* 178 Fed.Appx. 498, 502 (6th Cir.2006) (fees on fees are recoverable under section 1988 and "may include litigation on the fee request at both the lower court level and at the appellate level").

Although section 303(i) permits fees on fees, only a modest discretionary additional attorney fee is warranted. *See e.g., Lavin v. Husted,* 764 F.3d 646, 649 (6th Cir.2014) (attorney fee awards are discretionary under section 1988). First, given that it is improper for JRH to recover fees for any of the time spent on its additional punitive damage claim, anything beyond a modest fees on fees award may result in a windfall for JRH. Honigman pursued its own fee award and was a separate appellee; the November 2011 Stay Order authorized direct disbursement to Honigman if its award was subsequently upheld. So, to the extent JRH paid Honigman for pursuit of the additional attorney fee award, JRH *may* have a claim for reimbursement against Honigman.

■ Second, considering the case history and prior attorney fee awards—more than $2 million to date—the Court finds that the underlying purpose of fee shifting has been satisfied.[4] Therefore, considering *Coulter v. Tennessee,* 805 F.2d 146 (6th Cir.1986) (limiting fees on fees), and its progeny, only a reduced—and final—discretionary $20,000.00 fees on fees award is appropriate. *Fox v. Vice,* —— U.S. ——,

---

**3.** Alternatively, as an exercise of its discretion, the Court declines to grant such an award under section 105(a) or its inherent authority.

**4.** "[T]he purpose of the fee-shifting provision[s] is to make it easier for a plaintiff of limited means to bring a meritorious suit, by

offering some incentive for attorneys to take such cases." *Keene v. Zelman,* 337 Fed.Appx. 553, 557 (6th Cir.2009) (citing *N.Y. Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 63, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980)). There is also a deterrent component to section 303(i)'s attorney fees provision.

131 S.Ct. 2205, 2216, 180 L.Ed.2d 45 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of 'the district court's superior understanding of the litigation.' ")

### B. JRH is Not Entitled to an Award of Prejudgment Interest

■ Between 2003 and 2006, JRH claims it paid Honigman and other professionals over $2.2 million for services covered by the 2011 Fee and Cost Award. JRH now seeks $1.3 million in prejudgment interest—or damages—for the lost use of those funds.

As JRH acknowledges, it is within the Court's discretion to award prejudgment interest. *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir.2000) ("we have long recognized that the district court may [award prejudgment interest] at its discretion in accordance with general equitable principles") (internal quotations omitted); *Easter v. Jeep Corp.*, 1990 WL 16946; at *6 (6th Cir. Feb. 26, 1990) ("the lower court's refusal to grant any prejudgment interest on the attorney's fee award was not an abuse of discretion"). After a thorough review of the matter, in its discretion, the Court denies JRH's request for prejudgment interest.

### 1. Timeliness of JRH's Request for Prejudgment Interest

■ JRH's request for prejudgment interest is untimely. "[A] postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck v.*

*Ernst & Whinney*, 489 U.S. 169, 175, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Pursuant to Bankruptcy Rule 9023, Rule 59(e) is applicable to "cases under the [Bankruptcy] Code." However, Rule 9023 provides a shorter time within which a party may file a motion to alter or amend a judgment: 14 days after entry.

Relying on *In re Alpine Lumber & Nursery*, 13 B.R. 977 (Bankr.S.D.Cal.1981) and *In re Mitchell*, 2012 WL 5995443 (10th Cir. BAP Dec. 3, 2012), JRH argues that Rule 9023 does not apply because an "involuntary case does not become a case under Chapter 7 . . . until the order for relief is entered." *Alpine Lumber*, 13 B.R. at 979. According to JRH, because Adell's involuntary Chapter 7 petition was dismissed before an order for relief was entered, the petition does not constitute a "case under the Bankruptcy Code." The Court disagrees.

Based on the plain language of section 303(b), "[a]n involuntary case against a person is *commenced by the filing with the bankruptcy court of a petition under chapter 7* [.]" (Emphasis added).[5] Nothing in section 303(b) requires an order for relief to be entered before an involuntary petition becomes a "case" under the Code. *See In re Source Enterprises, Inc.*, 2006 WL 3253480, at *2 (Bankr.S.D.N.Y. Nov.8, 2006) (declining to follow *Alpine Lumber* and finding that "a bankruptcy case [is] commenced upon the Petitioners[sic] filing of the Involuntary Petition"); *Bell v. Bell (In re Bell)*, 225 F.3d 203, 215 (2nd Cir. 2000) ("[t]he voluntary, joint, or involuntary filing of a petition under an applicable chapter of the Code constitutes a com-

---

**5.** The term "person" includes a partnership or corporation. 11 U.S.C. § 101(41).

mencement of the case[.]"); *Term Loan Holder Committee v. Ozer Group, LLC* (*In re Caldor Corp.*), 303 F.3d 161, 168 (2nd Cir.2002) ("[c]ase, as used in the Bankruptcy Code, refers to litigation commenced by the filing with the bankruptcy court of a petition under the appropriate chapter of Title 11") (internal quotations omitted). Even *Mitchell*, upon which JRH relies, states:

> an estate is created and a person becomes a debtor when an involuntary petition is filed, not when the order for relief is entered. Thus, the bankruptcy court erred in finding that no bankruptcy case was ever created. A bankruptcy case existed during the "gap" period, which in this case, was the time between when the involuntary petition was filed and when the Dismissal Order was entered.

*In re Mitchell*, 2012 WL 5995443, at *10.

JRH also argues that Rule 59(e) does not apply because it is not seeking to "alter" or "amend" a judgment. Instead, it is complying with the November 2011 Stay Order that states:

> Following final adjudication, [JRH and Honigman] shall be entitled upon motion to entry of an order disbursing to them from the Funds on deposit such portions of the October 27, 2011 Order as have been affirmed by such final adjudication, *together with interest and costs*. [JRH and Honigman] shall be entitled to an order disbursing the principal portions of such Funds as have been affirmed by such final adjudication on ex parte motion, and Adell consents to immediate and expedited entry of an order disbursing such principal amounts of such Funds. As to accrued interest and costs, if the parties cannot agree as to the amount of such interest and costs, Adell consents to [an] expedited hearing on a motion by [JRH and Honigman] to

determine the amount of such interests and costs.

(Emphasis added). JRH contends that the bankruptcy court preserved the issue of prejudgment interest in its November 2011 Stay Order until a "final adjudication" by the Sixth Circuit. The Court disagrees. The interest preserved in the Order was that due on the funds deposited into the registry account, not prejudgment interest. JRH did not raise the issue of prejudgment interest until its pending motion was filed in June 2014.

The Court finds Rule 59(e) applies, the judgment was entered on October 27, 2011, and JRH's request for prejudgment interest is three years too late.

Even if JRH's request were somehow timely, the Court finds ample reason to deny it.

### 2. Prejudgment Interest for an Intentional and Outrageous Violation of Federal Law

JRH relies on *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431 (7th Cir.1989), to support its argument that prejudgment interest is appropriate because Adell's violation of section 303 was intentional and outrageous: "prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay. The award of prejudgment interest is particularly appropriate in a case ... where the violation was intentional, and indeed outrageous." *Gorenstein*, 874 F.2d at 436. According to JRH, prejudgment interest should be awarded "in connection with [Adell's] actions in causing the involuntary bankruptcy proceeding against JRH." The Court disagrees.

First, JRH's argument is a red herring. In 2003, Adell was ordered to pay $4.1 million in compensatory damages because

his petition was filed in bad faith. But JRH is *not* seeking prejudgment interest on these damages: JRH's brief clearly seeks interest on the $1.8 million in attorney fees from the 2011 Fee and Cost Award.

Second, as explained above, Rule 59(e) applies to requests for prejudgment interest, and such a request on a 2003 award would be 11 years too late.

Finally, prejudgment interest is not *mandated* when a federal law is violated. The Court must consider four factors: (1) the need for full compensation of an injured party; (2) considerations of fairness and the relative equities of the award; (3) the remedial purpose of the statute involved; and, (4) such other general principles as the Court deems relevant. *In re Global Technovations, Inc.*, 431 B.R. 739, 775 (Bankr.E.D.Mich.2010).

Although JRH does not address these factors, the Court finds they do not favor an award of prejudgment interest for the following reasons: (1) JRH has been fully compensated with both compensatory and punitive damages; (2) it would be unfair for the Court to award JRH prejudgment interest three years postjudgment; (3) the remedial purpose of section 303(i) is to "restor[e] the victim of a frivolous involuntary bankruptcy filing to his or her financial status prior to the proceeding," *In re John Richards Homes Bldg. Co., LLC*, 475 B.R. at 599, which does not include prejudgment interest on fees; and, (4) no other consideration justifies an untimely award of prejudgment interest.

### 3. Prejudgment Interest for Full Compensation

Citing a portion of *Young v. Langley*, 1988 WL 12805, at *1 (6th Cir.1988), JRH argues that prejudgment interest is necessary for full compensation:

[a]s the Supreme Court has acknowledged, [p]rejudgment interest is an element of complete compensation. The award serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.

(Internal quotations and citations omitted). But, JRH omitted the most applicable part of the Sixth Circuit's reasoning:

the Court also has admonished that even in cases where the presumption should be in favor of the award, a trial court must have some discretion to deny the award in appropriate cases.

One instance when the denial of the award is appropriate is when, as in this case, the district court concludes that the plaintiff has been compensated fully for the injury he has suffered. In such a case, the plaintiff has been made whole and there is no reason to grant the award.

*Id.* (Internal citation omitted). JRH has been fully compensated—including recovering over $2 million in punitive damages and postjudgment interest.

### 4. Prejudgment Interest for Lost Use of Funds

JRH's final argument relies on *Harris Trust & Savings Bank v. John Hancock Mutual Life Ins. Co.*, 137 F.Supp.2d 351 (S.D.N.Y.2001), and *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir.2004), to argue that it is entitled to prejudgment interest because it lost use of the money paid between 2003 and 2006. The Court finds JRH's reliance on these cases misplaced.

*Harris Trust* found that prejudgment interest should be assessed from the date the legal fees were paid. 137 F.Supp.2d at 361. Similarly, *Primrose* found that "in-

terest [should] be calculated from the time a plaintiff actually loses the use of the money rather than when the actual breach occurred." 382 F.3d at 565. But the Court does not reach the issue of how prejudgment interest is calculated unless it first finds it warranted. Because prejudgment interest is not warranted, *Harris Trust* and *Primrose* are not applicable.

Moreover, the $1.8 million in attorney fees was not withheld because of Adell's wrongful conduct. Instead, the money could not be released until the Supreme Court denied certiorari and the Court disbursed the funds in June 2014. *See Jordan v. Michigan Conference of Teamsters Welfare Fund*, 2000 WL 33321350, at *3 (E.D.Mich. Sept.28, 2000) (parties are not entitled to attorney fees until the court determines each party's entitlement).

### C. JRH's Motion to Reinstate the 2011 Punitive Damages Award or, in the Alternative, Refer the Punitive Damages Request to the District Court is Denied

■ In overturning JRH's $2.8 million punitive damage award, the Sixth Circuit held that the bankruptcy court lacked authority to award serious noncompensatory punitive damages under section 105(a) or its inherent authority. To circumvent this decision, JRH asks the Court to reinstate its award under section 303(i)(2)(B), or, alternatively, refer the matter to the district court for appropriate proceedings.[6]

---

**6.** Section 303(i)(2)(B) provides that:

[i]f the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment [ ] against any petitioner that filed the petition in bad faith, for [ ] punitive damages.

**7.** The bankruptcy court explicitly stated in its 2011 judgment that JRH's request did not

Because JRH's request is untimely, and a district court referral would be futile, this motion is also denied.

### 1. JRH's Request to Reinstate the Punitive Damages Award is Untimely

JRH seeks reinstatement of the bankruptcy court's $2.8 million punitive damages award under section 303(i)(2)(B), despite having originally only sought relief under section 105(a) and the court's inherent authority.[7] JRH's failure to previously request relief under section 303(i) before the bankruptcy court renders the issue waived. *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir.1996) ("issues that are not squarely presented to the trial court are considered waived").

Once a judgment has been entered, Rule 59(e) applies to postjudgment motions for punitive damages. *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 488 (8th Cir. 1992); *McConnell v. MEBA Medical & Benefits Plan*, 778 F.2d 521, 526 (9th Cir. 1985). As discussed above, Rule 59(e)— incorporated through Bankruptcy Rule 9023—provides only 14 days within which to file a motion to alter or amend a judgment. JRH failed to file a 59(e) motion. It also failed to request relief under Federal Rule of Civil Procedure 60(b) within a year from the date of the judgment. As such, the 2011 judgment cannot be altered.'[8]

---

seek additional punitive damages under section 303(i).

**8.** JRH states that it now requests punitive damages for postpetition conduct under section 303(i) because there was no authority to support the request in 2006. But, the Sixth Circuit's 2013 decision merely resolved the split of authority as to section 303(i)'s application to postpetition conduct. JRH also based its argument for attorney fees for postpetition conduct on section 303(i). There was ample

JRH argues that it is not seeking to "alter" or "amend" the 2011 judgment. Rather, its request is governed by the Sixth Circuit's 2013 opinion—which it claims "dictates" relief under section 303(i)(2)(B). This argument also fails. The Sixth Circuit's decision does not *dictate* a second award of punitive damages for JRH under section 303(i)(2)(B); it merely notes that section 303(i) was the statutory basis for the bankruptcy court's 2003 award of punitive damages. Nor did the Sixth Circuit direct this Court to award JRH punitive damages against Adell under section 303(i)(2)(B) on remand.

JRH's untimely request for a second bite at the apple is denied.

### 2. The Court Finds No Basis for Referral to the District Court

JRH alternatively asks the Court to refer its request for serious noncompensatory damages to the district court. The Court denies the request.

The Sixth Circuit made clear that bankruptcy courts' statutory and inherent punitive sanction powers do not include the authority to award serious noncompensatory punitive damages. *In re John Richards Homes Bldg. Co., L.L.C.*, 552 Fed. Appx. 401 at 414. JRH interprets this to mean that the only defect in the 2011 punitive damages award was that it was rendered by the bankruptcy court—not the district court. Even if true, the Court finds ample basis to deny referral.

Section 105(a) *does* grant bankruptcy courts the authority to award *mild* noncompensatory punitive damages—upon a finding of proof beyond a reasonable doubt. *Id.* at 415–16. It is, therefore, within the Court's authority to determine

whether proof beyond a reasonable doubt exists to support a mild noncompensatory punitive damages award. Adell says that because the Florida bankruptcy court, district court, and the Eleventh Circuit have determined that he did nothing sanctionable in pursuing personal bankruptcy, JRH cannot prove sanctionable conduct beyond a reasonable doubt. The Court agrees.

Having thoroughly reviewed the findings of this bankruptcy court's 2011 judgment and the Eleventh Circuit's opinion affirming the Florida bankruptcy court's denial of JRH's request for sanctions, the Court finds proof beyond a reasonable doubt lacking to justify even mild noncompensatory damages. For example, the Michigan bankruptcy court found only that *"for the most part,* the record supports the facts on which JRH's motion for additional punitive damages is based." (Emphasis added). And, in affirming the Florida bankruptcy court's denial of sanctions, the Eleventh Circuit held:

> Given the discretionary nature of sanctions, we are satisfied by the bankruptcy court's decision that Adell attempted to pursue a legitimate goal within the utmost of his ability and, therefore, to impose a sanction would be a double punishment in addition to the $2 million judgment imposed by the Michigan Bankruptcy Court.

*In re Adell,* 296 Fed.Appx. 837, 839 (11th Cir.2008) (internal citations omitted). On this record, an award of mild noncompensatory punitive damages cannot be established. This lack of proof beyond a reasonable doubt—the same burden that the district court would apply to JRH's request for serious punitive damages—renders referral to the district court futile. JRH's request is denied.

authority that JRH could have used to support its request for punitive damages under section 303(i).

## IV. CONCLUSION

The parties' inclination to appeal has become almost Pavlovian. But after more than twelve years of litigation—both sides now damaged by Adell's egregious conduct—the matter should be brought to a close.

Other than a modest additional discretionary award of attorney fees, JRH's requests are without merit. The Court orders Adell to pay JRH a final attorney fee of $20,000.00 *on or before January 9, 2015.* In all other respects, JRH's motions are **DENIED.**

**IT IS ORDERED.**