BERNICE BOUIE DONALD, Circuit Judge,
concurring only in the judgment.
I agree with the majority that the district court must support its fee calculation to enable review, and for that reason, I concur in the majority’s judgment. However, I have reservations regarding the majority’s articulation of existing law regarding fee awards under the FLSA, because I believe the lodestar approach used by the court in calculating fees is presumptively reasonable.
The FLSA and its kin among civil rights laws are not average statutes. It is well known that parties typically pay their own attorney fees in the U.S. court system. See Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, in certain “fee-shifting” statutes, Congress expressly permits — and sometimes requires — that a prevailing plaintiff recover reasonable attorney fees from his opponent for successful litigation under the statute. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). Congress includes such provisions to ensure that even the most vulnerable plaintiffs are able to enforce certain essential statutory rights. Shifting the cost of litigation hot only emphasizes the importance of these rights— here, fair payment for hours worked — but also reflects the unfortunate reality that many plaintiffs seeking to enforce these rights often lack the power and means to do so. Id. The FLSA is one of these far-from-ordinary statutes: its text directs that a court “shall” award attorney fees to a successful plaintiff. 29 U.S.C. § 216(b).
The majority fails to recognize this mandate. We have expressly held that “[a]n award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory[.]” Fegley v. Higgins, 19 F.3d *561 1126, 1134 (6th Cir.1994); see also United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass’n, Local 307 v. G & M Roofing and Sheet Metal Co., 732 F.2d 495, 501 (6th Cir.1984). While the amount of fees awarded to the plaintiff remains within the district court’s discretion, a court that refuses to award any fees to a successful plaintiff contradicts the plain language of the statute.[1] Fegley, 19 F.3d at 1134; 29 U.S.C. § 216(b). If anything, failing to award fees would be an abuse of discretion, because it flatly contradicts the law.
The majority instead focuses on another aspect of the FLSÁ fees requirement: that the amount awarded be reasonable. We have held that “reasonable” fees in the FLSA context are those that are adequate to attract competent counsel, but which do not produce a windfall for the attorney. Lavin v. Rusted, 764 F.3d 646, 649 (6th Cir.2014) (quoting Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir.1999); Adcock-Ladd v. Sec’y of Treasury, 227 F.3d 343, 349 (6th Cir.2000)). This definition reflects the policy supporting fee awards in civil rights cases: access to the courts for plaintiffs who might otherwise not be able to engage an attorney on their behalf. There are two possible approaches to calculating a “reasonable” fee in the FLSA context.
The opinion in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), presents one approach. In that case, the Fifth Circuit addressed whether a district court had appropriately calculated the attorney fees it awarded to a plaintiff. Because the district court “judgment d[id] not elucidate the factors which eon-tributed to the decision and upon which it was based[,]” the Court of Appeals identified twelve factors to guide its reconsideration on remand: 1) the time and labor required; 2) the novelty and difficulty of the legal questions; 3) the skill requisite to perform the legal service properly; 4) preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee was fixed or contingent; 7) the time limitations imposed by the client or circumstances; 8) the amount involved and results obtained; 9) the experience, reputation, and ability of the attorney; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. Johnson, 488 F.2d at 717-19.
The more common approach is the “lodestar” method, in which the court determines a reasonable hourly rate for the jurisdiction of the case and multiplies that rate by the reasonable number of hours counsel dedicated to the case. The Supreme Court favors this method over the Johnson approach, for several reasons:
First, in accordance with our understanding of the aim of fee-shifting statutes, the lodestar looks to the prevailing market rates in the relevant community. Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case. Second, the lode *562 star method is readily administrable, and unlike the Johnson approach, the lodestar calculation is “objective,” and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results.
Perdue, 559 U.S. at 551-52, 130 S.Ct. 1662 (internal citations and quotation marks omitted). The Supreme Court has established a “strong presumption” that the lodestar amount represents a “reasonable” fee in the context of a fee-shifting statute like the FLSA:
The lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a strong presumption that the lodestar represents the reasonable fee, and have placed upon the fee applicant who seeks more than that the burden of showing that such an adjustment is necessary to the determination of a reasonable fee.
City of Burlington v. Dague, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (citing Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986); Blum v. Stenson, 465 U.S. 886, 898, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (internal citations and quotation marks omitted)).
We have recognized that additional factors like those in Johnson aid a district court in adjusting its calculation of attorney fees after establishing its lodestar baseline. Lavin, 764 F.3d at 649. Indeed, as the majority notes, a district court properly proceeds to an inquiry beyond the lodestar amount if a party presents specific evidence that the case at bar is rare or exceptional. Adcock-Ladd, 227 F.3d at 350 (quoting Delaware Valley, 478 U.S. at 565, 106 S.Ct. 3088). Allega’s brief in opposition to Dean’s motion for fees argued that awarding fees would be unfair due to various specific elements of Dean’s case, each of which speak to the company’s general assertion that Dean’s action case does not reflect the ideals behind the FLSA. In Fegley, we explained that
The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances. Courts should not place an undue emphasis on the amount of the plaintiff’s recovery because an award of attorney fees here encourages the vindication of congres-sionally identified policies and rights. Indeed, we have upheld substantial .awards of attorney fees even though a plaintiff recovered only nominal damages.
Fegley, 19 F.3d at 1134-35 (internal quotation marks and edits omitted). The relationship between damages and fees awarded in a FLSA case, therefore, is complex.
The majority emphasizes the fact that Dean’s recovery was just over $100, yet the district court awarded him thousands in attorney fees. Where a district court opts to adjust its lodestar amount, the plaintiffs degree of success on his claims is a key element of that inquiry. Adcock-Ladd, 227 F.3d at 349. I believe it is vital to the consistency of this court’s FLSA jurisprudence to highlight, however, that the mere existence of a large difference between damages awarded and fees requested does not, by itself, indicate that a district court abused its discretion in conducting the necessary calculations.
The very nature of these cases is likely to yield inconsistent results. The law recognizes that there are no guaranteed results in litigation. Thus, the fact that a plaintiff is only successful on certain claims should not be the sole measure of the *563 amount of the award. . That is precisely the reason we defer to the court that oversees a case: that court has an unmatched familiarity with the record, the parties, and the claims at hand, because it has managed the litigation over time. The district court in this case failed to share that critical insight in its opinion. For that reason, I concur in the judgment,

. The U.S. District Court for the Northern District of Ohio, which heard this case below, has consistently observed this rule. See, e.g., Gomez v. ERMC Prop. Mgmt. Co., LLC, No. 3:13-CV-01081, 2014 WL 3053210, at *2 (N.D.Ohio July 7, 2014); Snide v. Disc. Drug Mart, Inc., No. 1:11 CV 00244, 2013 WL 6145130, at *4 (N.D.Ohio Nov. 21, 2013); White v. All About Cable Connections, LLC, No. 1:12CV1708, 2013 WL 2949920, at *3 (N.D.Ohio June 13, 2013); Abdelkhaleg v. Precision Door of Akron, No. 5:07 CV 3585, 2010 WL 395236, at *6 (N.D.Ohio Jan. 25, 2010).