RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0300P (6th Cir.)
File Name: 00a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JANICE ADCOCK-LADD,
     *Plaintiff-Appellant,*

     *v.*

SECRETARY OF TREASURY;
UNITED STATES SECRET
SERVICE; DEPARTMENT OF
TREASURY,
     *Defendants-Appellees.*

No. 99-5414

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 93-00595—James H. Jarvis, District Judge.

Argued: June 15, 2000

Decided and Filed: September 7, 2000

Before: KRUPANSKY, NORRIS, and SUHRHEINRICH,
Circuit Judges.

---

**COUNSEL**

**ARGUED:** David H. Shapiro, SWICK & SHAPIRO, Washington, D.C., for Appellant. Mary K. Doyle, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION,

1

APPELLATE STAFF, Washington, D.C., for Appellees. **ON BRIEF:** David H. Shapiro, SWICK & SHAPIRO, Washington, D.C., for Appellant. Mary K. Doyle, Michael Jay Singer, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, APPELLATE STAFF, Washington, D.C., for Appellees.

---

## OPINION

---

KRUPANSKY, Circuit Judge.   The plaintiff-appellant, Janice Adcock-Ladd ("Adcock-Ladd"), the undisputed "prevailing party" in a federal employment discrimination lawsuit against the defendant-appellees United States Secretary of Treasury in his official capacity, and the United States Secret Service, Department of Treasury (sometimes collectively referred to as "the government" or "the United States"), has contested the district court's order by which it awarded fees to David L. Shapiro ("Shapiro"), a Washington, D.C. lawyer who the plaintiff had specially retained to depose a key witness in the national capital.   Adcock-Ladd has charged that the district court abused its discretion by applying to Shapiro's services the reasonable hourly rate which prevailed in Knoxville, Tennessee (the situs of the lawsuit) instead of his proven reasonable hourly charge which he customarily billed for legal work performed in the District of Columbia.

On October 13, 1993, Adcock-Ladd, formerly employed as a Secret Service special agent by the United States Treasury Department, initiated this litigation in the Eastern District of Tennessee at Knoxville.   Her two-count complaint alleged harassment, discrimination, and retaliation in employment prompted by her opposition to alleged gender-animated discriminatory employment practices, actionable under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16 (count one); and retaliatory disclosures of

the plaintiff  $12,690 in attorney fees for Shapiro's work, as requested via her petition.  Additionally, this court declares that the plaintiff is entitled to recover, from the defendants, reasonable fees for Shapiro's successful prosecution of the instant appeal, together with his time reasonably expended in preparing a future supplemental application for those fees.  *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987).  Therefore, the district court is further instructed to conduct such proceedings, following remand, as are necessary to determine the number of hours reasonably expended by Shapiro on this appeal and on his supplemental fee petition related to this appeal, for which he shall be compensated $300 per hour. *See Smith v. Detroit Bd. of Educ.*, 728 F.2d 359 (6th Cir. 1984) (*per curiam*).

**IT IS SO ORDERED.**

protected information concerning the plaintiff's employment grievances and other confidential matters in violation of the the Privacy Act of 1974, as amended, 5 U.S.C. § 552a (count two).   The ensuing substantive litigation was complex, protracted, and contentious.

The basic material facts surrounding the Washington, D.C. deposition, and its overall significance to the plaintiff's cause, have not been disputed by the adversaries.  The plaintiff noticed the deposition of John McElney ("McElney"),[1] who had served as a Deputy Assistant Director of the Secret Service during the time period relevant to Adcock-Ladd's lawsuit, but who, by the time of his deposition, had been transferred and promoted to Assistant Director for Criminal Investigations of the Naval Criminal Investigative Service. McElney resided in metropolitan Washington, D.C..  The defendants refused to produce McElney for deposition in Knoxville, Tennessee, the situs of the lawsuit.  Furthermore, the defendants also refused to reserve consecutive days for his deposition in the District of Columbia.   Due to the defendants' uncooperative vexatious tactics, the plaintiff's Tennessee counsel determined that McElney could be deposed most expeditiously and economically by a resident Washington lawyer.

Consequently, in mid-July 1995, they retained Shapiro, a highly experienced Washington lawyer, to serve as the plaintiff's local District of Columbia counsel for the sole purpose of deposing McElney.  That deposition ultimately occurred during three non-consecutive days (July 20, 24, and 27, 1995).   When all was said and done, the McElney deposition furnished crucial proof that the defendants had schemed to pressure the plaintiff's resignation. Most notably, the government produced, in connection with that deposition,

---

[1] The spelling of that individual's name sometimes appears in the record alternately as "McEleny" or "McElny." This opinion has adopted the spelling utilized in the district court's order under review.

a "strategy memorandum" which documented her employer's plan to engineer her departure.

On November 14, 1995, prompted in large measure by the damaging evidence disclosed during the McElney deposition, the defendants settled Adcock-Ladd's claims for $350,000. The defendants have further stipulated that the plaintiff was the "prevailing party" in the subject action for attorney fee purposes.[2] The single issue reserved by the settlement compact for future resolution was the reasonable *amount* of attorney fees, costs, and expenses incurred by the plaintiff to be reimbursed by the defendants. However, because the parties were ultimately unable to agree upon the value of the implicated legal services, the plaintiff moved in the district court for a fee award, as permitted by the settlement memorial and governing law. *See* note 2 above.

The plaintiff's application for reimbursement of all legal fees which she incurred in this action requested, *inter alia*, compensation for 42.3 hours billed by Shapiro at $300 per hour (totaling $12,690) for work performed within the District of Columbia in connection with the McElney deposition. Shapiro evidenced that he, and other Washington attorneys of similar experience, customarily billed at least $300 per hour for legal services performed during the implicated period.[3] In

---

[2]*See* 42 U.S.C. §§ 2000e-5(k) & 2000e-16(d) (authorizing, in employment discrimination lawsuits, the discretionary court-awarded allowance of a reasonable attorney fee, as a recoverable litigation cost, in favor of "prevailing parties" other than the United States); *cf.* 42 U.S.C. § 1988(b) (same regarding civil rights litigations).

[3]Shapiro's supporting affidavit affixed a copy of the "*Laffey* Matrix," an official statement of market-supported reasonable attorney fee rates which was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia. *See Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), *overruled in part by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (*en banc*). For services provided during 1994-95, the *Laffey* Matrix set $310 per hour as the reasonable

---

Under those circumstances, and on the total record evidence including the uncontested fact that Shapiro's deposition of McElney significantly contributed to the plaintiff's attainment of a favorable final settlement, the base-point reasonable hourly rate for Shapiro's work, for lodestar tabulation purposes, was his customary Washington, D.C. $300 per hour fee. Because the lower court misinterpreted Sixth Circuit case law to authorize adoption of the prevailing Knoxville rate ($150) for Shapiro's work simply because Adcock-Ladd had inaugurated her judicial complaint in that geographical region, its allowance of only $150 per hour for Shapiro's services constituted an abuse of discretion.[9] Because no "rare" or "exceptional" circumstances have overcome the "strong presumption" that Shapiro was entitled to his full lodestar fee of $12,690 for his contribution to the plaintiff's success, the district court should have imposed that amount against the defendants on account of Shapiro's work.

Accordingly, the district court's January 12, 1999 fee order is **REVERSED** to the extent of Shapiro's fee award. As a matter of law, the lodestar computation for Shapiro's work should have incorporated the reasonable Washington hourly rate of $300. Thus, this case is **REMANDED** for further proceedings as are consistent with this opinion. In light of the district court's uncontested finding that Shapiro was entitled to compensation for his 42.3 hours of work on the plaintiff's case without reduction, the district court is instructed to grant

---

[9]Furthermore, the district court legally erred by arbitrarily restricting Shapiro's fee award for the stated reason that other lawyers on Adcock-Ladd's litigation team had received substantial independent fee awards, which caused the trial court discomfort with according Shapiro the $300 per hour Washington standard instead of the $150 per hour Knoxville measure. To the contrary, justifiable substantiated professional fees granted to other lawyers for the prevailing party for their labors are legally irrelevant to a proper lodestar analysis of the reasonableness of the fees requested by the subject lawyer. Similarly, a trial judge's "discomfort" with the total amount of the supported reasonable lodestar fee earned by the subject lawyer comprises a legally insufficient rationale for the reduction of that fee.

lawyers in the region normally receive $85 an hour should be compensated at the lower rate.

*Id.* (internal quotations omitted) (*citing Wayne v. Village of Sebring*, 36 F.3d 517, 531-32 (6th Cir. 1994), *cert. denied*, 514 U.S. 1127 (1995); *Coulter v. Tennessee*, 805 F.2d 146, 149 (6th Cir. 1986), *cert. denied*, 482 U.S. 914 (1987)).

Nonetheless, on the record presented in the action *sub judice*, the district judge failed to perform a proper lodestar analysis. The trial court erroneously concluded that the hourly rate prevailing within the venue of the court wherein the case was commenced will *always* constitute the maximum allowable reasonable hourly rate for legal work performed by a foreign counselor in a venue other than the jurisdiction wherein the case was commenced. Although the lower court cited no legal authority in support of its disposition of Shapiro's fee application, its decision appears to flow from a misconstruction of *Hudson* and similar precedents.

However, the *Hudson* line of cases exclusively governs fee applications tendered by out-of-town counsel who volitionally elect to represent a party in a cause to be litigated within the jurisdiction of a court wherein the case was filed, rather than the judicial venue of the lawyer's professional residence, thus extending notice and an option to the foreign lawyer to reject the commission if he deems unattractive the customary local fee standards within the forum court's territorial jurisdiction.

By contrast, in the instant litigation, Adcock-Ladd retained Shapiro because she was *required* to depose McElney, a Washington bureaucrat, in the national capital. *Cf. Hudson*, 130 F.3d at 1208 n.14. That special need was largely fomented by the defendants' obstructive and dilatory litigation tactics. Shapiro's work was directly related to the Washington assignment for which he had been specially associated; and he transacted all professional duties for the plaintiff within the District of Columbia, with exceptional results.

opposition, the defendants argued that the reasonable prevailing Knoxville, Tennessee hourly rate assigned by the district court to the plaintiff's other lawyers, to wit, $150, should also apply to Shapiro's services in this case.

The district judge initially referred the plaintiff's fee petition to a magistrate judge, who, after hearing testimony from the plaintiff's four attorneys of record plus her expert witness on attorney fees, and reviewing voluminous documentation, issued an 85-page Report and Recommendation ("R & R") on June 19, 1998. The magistrate, via his R & R, rejected the defendant's request for a 50% reduction to Shapiro's documented hours, and concordantly dismissed their supplication for a 50% reduction to his requested hourly rate.[4] Accordingly, the magistrate recommended the district judge to award the plaintiff the full compensation sought for Shapiro's legal services, namely $12,690, computed by multiplying Shapiro's substantiated reasonable hours (42.3) by his proved reasonable hourly rate ($300).[5]

---

foundational rate for a Washington lawyer who, like Shapiro, had twenty or more years of professional experience.

[4] The R & R addressed multiple contested issues related to the plaintiff's petition for attorney fees. However, as evolved herein, only the lower court's findings and conclusions germane to Shapiro's fee claim are relevant to the instant appeal.

[5] The portion of the R & R material to Shapiro's hourly rate recited:

The only hourly rate not addressed by the court previously was that of attorney David L. Shapiro, who practices law in Washington, D.C., and who had requested an hourly rate of $300. Defendants were not precluded from taking issue with Mr. Shapiro's hourly rate, nor were they restricted from engaging in reasonable discovery regarding that hourly rate [Doc. 173]. In spite of this previous finding by this court, defendants spent 19 pages of their brief addressing the hourly rate issue, but less than four pages speaking to the hourly rate of

Mr. Shapiro, which is the only rate left at issue in this case. The defendants [sic] insistence on rearguing matters that have previously been decided in this case, resulting in multiple filings and court hearings, illustrates in large measure the hard fought nature of this litigation and the reason why the request for attorneys' fees in this case is so high.

On the issue of a reasonable hourly rate for Mr. Shapiro, plaintiff has established that an hourly rate of $300 is reasonable for an attorney of Mr. Shapiro's competence, qualifications, and experience in the Washington, D.C. area. Mr. Shapiro began practicing law in 1974, was admitted to the Bar of the District of Columbia in 1978, has had a very successful professional career, and performed his legal services for plaintiff in 1995. According to the Laffey Matrix, the amount to be paid an attorney with 20 years or more experience for services provided in 1994-1995 was $310. Mr. Shapiro has stated in his declaration that he has charged $300 per hour since July 1, 1995, and he was engaged to represent plaintiff in mid-July 1995. Therefore, it is RECOMMENDED that the sum of $300 per hour be approved by this court as a reasonable hourly rate for Mr. Shapiro.

The undersigned is fully aware that Mr. Shapiro was paid in the amount of $150 per hour for his work in representing Ms. Hudson in the case of *Hudson v. Reno*, 130 F.3d 1193 (6th Cir. 1997) [discussed below]. In reaching that conclusion, however, the district judge utilized the billing rate for attorneys in Knoxville, Tennessee, during the relevant time period. *Hudson v. Reno* was tried in the Eastern District of Tennessee at Knoxville, it was a Knoxville case, and the attorneys were compensated at the usual and customary billing rates for attorneys in Knoxville, Tennessee, with comparable training, skill, and experience. The legal services performed by Mr. Shapiro in this case were performed in Washington, D.C., because the defendants refused to bring the deponent to Knoxville, Tennessee, to be deposed. Had the defendants agreed to produce Mr. McElney in Knoxville, he could have been deposed by Ms. Wall or Ms. Hudson at one-half the hourly rate of Mr. Shapiro.

Regarding the 42.3 hours documented by Shapiro, the R & R accurately stated that he had filed a declaration which set forth the nature and description of his services rendered, and the amount of time which he

A trial court, in calculating the "reasonable hourly rate" component of the lodestar computation, should initially assess the *"prevailing market rate in the relevant community."* *Blum*, 465 U.S. at 895 (emphasis added). The Sixth Circuit has resolved that, when a counselor has voluntarily agreed to represent a plaintiff in an out-of-town lawsuit, thereby necessitating litigation by that lawyer primarily in the alien locale of the court in which the case is pending, the court should deem the "relevant community" for fee purposes to constitute the legal community within that court's territorial jurisdiction; thus the "prevailing market rate" is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices, at least where the lawyer's reasonable "home" rate exceeds the reasonable "local" charge. *Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997), *cert. denied*, 525 U.S. 822 (1998).

In *Hudson*, Shapiro, the same attorney who is involved in the instant case, had served as *lead attorney* for a successful Title VII employment discrimination plaintiff in an action litigated within the Eastern District of Tennessee. Although Shapiro ultimately requested between $225 and $300 per hour for his work in that case, which was commensurate with his contemporaneous Washington, D.C. customary billing rates and consistent with the fees charged by comparable Washington lawyers, the district court allowed only $150 per hour, the then-prevailing Knoxville rate. *Id*. at 1208.

In affirming that decision, the Sixth Circuit pronounced that:

this Court has made clear that it is not an abuse of discretion for a court to apply local market rates. Thus, a renowned lawyer who customarily receives $250 an hour in a field in which competent and experienced

relevant considerations peculiar to the subject litigation. *Reed*, 179 F.3d at 471-72. The factors which the district court may consider, either in determining the basic lodestar fee and/or adjustments thereto, include the twelve listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[8] *Hensley*, 461 U.S. at 434 n.9.

A highly important *Johnson* factor is the *result achieved*. *Id*. at 435-36. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. at 435. Generally, a "strong presumption" favors the prevailing lawyer's entitlement to his lodestar fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986) (*citing Blum*, 465 U.S. at 897). Accordingly, "modifications [to the lodestar] are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts." *Delaware Valley Citizens' Council*, 478 U.S. at 565 (*citing Blum*, 465 U.S. at 898-901). *See also Van Gerwen v. Guarantee Mutual Life Co.*, No. 98-56028, 2000 WL 702875, at * 2 (9th Cir. June 1, 2000).

---

[8] "These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Reed*, 179 F.3d at 471-72 n.3 (*citing Johnson*, 488 F.2d at 717-19). Some of those factors ordinarily may be considered only when resolving the basic lodestar fee, and thus cannot be used to augment that lodestar. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (*citing Blum v. Stenson*, 465 U.S. 886, 898-901 (1984)); *see Van Gerwen v. Guarantee Mutual Life Co.*, No. 98-56028, 2000 WL 702875, at *2 (9th Cir. June 1, 2000).

The defendants filed timely written objections to segments of the R & R, which the district court reviewed *de novo*. 28 U.S.C. § 636(b)(1). Among other objections not pertinent to this review, the defendants contested the R & R's recommendations that Shapiro (1) be compensated for all of his claimed 42.3 hours, and (2) receive his Washington billing rate of $300 per hour for his reasonably expended time.

In his January 12, 1999 Memorandum Opinion, the district judge partially sustained the defendants' subject objections, remarking *in toto*:

Additionally, defendants contend that attorney David H. Shapiro should be compensated for fewer hours and at Knoxville rates. While the court does not intend to reduce Mr. Shapiro's hours, the court will, however, in its discretion allow Mr. Shapiro to only be compensated at the rate of $150 per hour as would any Knoxville attorney. That is certainly not to say, however, that Mr. Shapiro cannot command $300 an hour (or even more) for his services. Rather, the court simply has tremendous reluctance in awarding an hourly fee of this magnitude. This is especially true given the total amount of fees which are being awarded in this case.[6] The court is only comfortable with compensating Mr. Shapiro at the same rate that the court would have compensated Ms. Wall, Ms. Hudson, or Mr. Andrews [the plaintiff's Tennessee lawyers] if any one of them had conducted the deposition of Mr. McElney. Therefore, the court will sustain defendants' objection on this basis whereby Mr. Shapiro will be compensated at the rate of $150 an hour.

---

had expended on a daily basis; and that Shapiro had testified at the evidentiary hearing concerning his fee application.

[6] The trial court authorized an aggregate attorney fee recovery for the plaintiff which totaled $254,147.50.

Therefore, the district judge awarded Shapiro $6,345 (an amount equal to one-half of his requested remuneration), computed by multiplying his court-determined reasonable hours (42.3) by the court-approved reasonable Knoxville hourly rate ($150).

On March 11, 1999, the government timely noticed an appeal of the trial court's overall attorney fee order. On March 18, 1999, the plaintiff initiated a seasonable cross-appeal of Shapiro's fee award, seeking an additional $6,345 for him. Subsequently, the United States voluntarily dismissed its seminal appeal. On July 27, 1999, the government issued a Treasury draft to Adcock-Ladd in the sum of $320,810.07, which discharged its full indebtedness for the attorney fees and costs which had been awarded by the district court to the prevailing plaintiff, together with accrued interest thereon.

Hence, at present, only the plaintiff's cross-action for the full amount of Shapiro's fee request remains active before this intermediate forum. The defendants have not debated Shapiro's proof that $300 per hour is a reasonable Washington, D.C. rate for his subject work; and the plaintiff has not assailed the reasonableness of $150 per hour for legal representation in Knoxville, Tennessee. Rather, this appeal solely joins the issue whether the district court should have granted Shapiro the reasonable Washington, D.C. hourly charge of $300, instead of the reasonable Knoxville, Tennessee hourly rate of $150, for his work in the cause at bench.

"A district court's award or denial of attorney's fees is reviewed for abuse of discretion."[7] *Cramblit v. Fikse*, 33 F.3d 633, 634 (6th Cir. 1994) (*per curiam*) (citation omitted).

---

[7] Identical standards govern under 42 U.S.C. § 1988, 42 U.S.C. §§ 2000e-5(k) & 2000e-16(d), and/or any other federal enactment which empowers a court to bestow recovery of attorney fees upon a "prevailing party." *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983).

Abuse of discretion is evident when "it [the lower court] relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Phelan v. Bell*, 8 F.3d 369, 373 (6th Cir. 1993) (citation omitted). An abuse of discretion may also be found "when the reviewing court is firmly convinced that a mistake has been made." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir.2000) (citation omitted). *See also Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996) ("Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.") (citation omitted).

Generally, the trial judge's exercise of discretion in statutory fee award cases is entitled to substantial deference, especially when the rationale for the award was predominantly fact-driven. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)*; Wilson-Simmons v. Lake County Sheriff's Dept.*, 207 F.3d 818, 823 (6th Cir. 2000); *Reed v. Rhodes*, 179 F.3d 453, 469 n.2 (6th Cir. 1999); *Hadix v. Johnson*, 65 F.3d 532, 534-35 (6th Cir. 1995). Although the trial court's discretion in fee award cases sweeps broadly, it is not absolute. Among other things, the district court "must provide a clear and concise explanation of its reasons for the fee award." *Hadix*, 65 F.3d at 535 (*citing, inter alia, Hensley*, 461 U.S. at 437).

"The primary concern in an attorney fee case is that the fee awarded be reasonable," that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers. *Reed*, 197 F.3d at 471 (*citing Blum v. Stenson*, 465 U.S. 886, 893, 897 (1984)). The trial court's initial point of departure, when calculating a "reasonable" attorney fee, should be the determination of the fee applicant's "lodestar," which is the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Reed*, 179 F.3d at 471. The trial judge may then, within limits, adjust the "lodestar" to reflect