**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0496n.06

No. 15-1449

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Aug 23, 2016

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| H.D.V. - GREEKTOWN, LLC; 415 EAST CONGRESS, LLC; and K AND P, INCORPORATED, d/b/a Deja Vu, d/b/a Zoo Bar, | ) ) ) ) |
| | ) |
| **Plaintiffs – Appellants,** | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF DETROIT, MICHIGAN, | ) |
| | ) |
| **Defendant – Appellee,** | ) |
| | ) |
| and | ) |
| | ) |
| MAJED DABISH, | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

**OPINION**

Before: MOORE, GIBBONS, and DAVIS,[*] Circuit Judges.

**ANDRE M. DAVIS, Senior Circuit Judge.** This appeal arises from a First Amendment action that concerned efforts by Appellee, the City of Detroit, Michigan (the "City"), to thwart the sale and continuing operation of an adult entertainment nightclub in downtown Detroit. After years of litigation, culminating in a previous appeal to this Court that effectively resolved the merits issues, the district court entered a consent decree awarding $2.95 million in damages

---

[*] The Honorable Andre M. Davis, Senior Circuit Judge for the United States Court of Appeals for the Fourth Circuit, sitting by designation.

to Appellants H.D.V. - Greektown, LLC ("H.D.V."); 415 East Congress, LLC ("415 E. Congress"); and K and P, Incorporated ("K & P"). Appellants then sought over $1.5 million in attorneys' fees and costs. After concluding that Appellants could not recover certain fees, the district court reduced the remaining requested fees by 60%. It declined to grant a fee enhancement and also imposed a 3% cap on the fees incurred by Appellants' counsel while litigating the attorneys' fees motion, ultimately awarding in fees and costs $385,401.12.

Appellants now challenge each of those decisions on appeal. They also ask us to assign this case to a different district judge on remand. We agree with Appellants that the district court did not adequately explain why a 60% reduction was appropriate. Moreover, the award of fees for fees must be recalculated given our decision in *The Northeast Ohio Coalition for the Homeless v. Husted*, Nos. 14-4083, 14-4084, 14-4132, 14-4133, 15-3295, 15-3296, 15-3380, 15-3381, --- F.3d ---, 2016 WL 4073489 (6th Cir. Aug. 1, 2016) (published). In all other respects, we discern no error or abuse of discretion. Accordingly, we **AFFIRM IN PART, REVERSE IN PART, and REMAND** for further proceedings. Appellants' request for reassignment on remand is **DENIED**.

## I. BACKGROUND

We described the lengthy background of this litigation in the earlier merits appeal. *See H.D.V.-Greektown, LLC v. City of Detroit*, 568 F.3d 609, 613–16 (6th Cir. 2009). The relevant facts for the purposes of the attorneys' fees motion are as follows.

### A. The 2003 Action

K & P has operated a topless nightclub in downtown Detroit since 1986, in a building now owned by 415 E. Congress. In December 2002, H.D.V. entered a conditional agreement to purchase the nightclub and applied for a transfer of K & P's liquor license and topless activity

2

permit. Hoping to frustrate the purchase, the City refused to consider the transfer applications, asserting that the nightclub's continuing use of topless female dancers had violated a condition of land use known as "Condition 18," which limited K & P to providing male-only adult entertainment. In 2003, Appellants filed suit in the Eastern District of Michigan, asserting that Condition 18 violated their First Amendment rights (the "2003 Action"). The parties eventually settled the dispute and stipulated that Condition 18 was unenforceable. The parties also stipulated that the dismissal of the 2003 Action was "without an award of costs or attorneys['] fees to any party." R. 84-5 2d Am. Compl. Ex. A ¶ 10 (Page ID #2513). Accordingly, in December 2003, the district court entered an order declaring that the City could not enforce Condition 18 and stating that "all claims in this action are dismissed without prejudice and without costs or an award of attorneys['] fees to any party." R. 84-6 2d Am. Compl. Ex. B, at 3 (Page ID #2517).

Despite the district court order, three years passed without any action on the transfer applications by the City. The City Council had instead passed resolutions ostensibly designed to make it more difficult for K & P to sell or operate its nightclub, including resolutions that prohibited the transfer of licenses or permits for businesses that operated with a nonconforming use. The City then issued K & P two zoning violation notices, both alleging that K & P had expanded the nonconforming use of its nightclub. K & P appealed the notices to the Board of Zoning Appeals ("BZA") where, despite the 2003 court order, the City continued to assert that it could enforce Condition 18. The BZA dismissed the first violation notice and unanimously ruled in favor of K & P as to the second violation notice.

**B. The 2006 Action**

Appellants filed their second suit—the operative one here—in the Eastern District of Michigan in March 2006 (the "2006 Action"). At the time, the City still had not acted on Appellants' transfer applications. In a sprawling, 109-page complaint that asserted 16 counts over 291 paragraphs, Appellants brought facial and as-applied constitutional challenges to the City's zoning and sign ordinances.

Appellants amended the complaint in April 2008, explaining that the "amend[ment] does not seek to add new counts, or new causes of action[], but rather seeks only to add additional Plaintiffs," namely, four Jane Roe Plaintiffs "who have performed at [K & P's] club." R. 46 Pls.' Mot. Leave to File 1st Am. Compl. ¶ 3 (Page ID #1447). The Jane Roe Plaintiffs were added as representatives of a putative class of similarly situated employees. Appellants amended the complaint a second time on May 11, 2009, "to add additional facts to support a count that already exists in the current complaint"—the as applied challenge to the City's zoning ordinances. R. 81 Pls.' Mot. Leave to File 2d Am. Compl. ¶ 4 (Page ID #2230). Specifically, Appellants amended the complaint to include allegations that then-City Council member Monica Conyers had solicited a $25,000 bribe from Appellants in exchange for her vote in favor of the transfer applications. The amendments added 29 pages and 16 paragraphs to the operative complaint but no additional causes of action.

In January 2007, Appellants filed a motion for partial summary judgment[1] challenging the City's zoning ordinances.[2] *See H.D.V.-Greektown, LLC v. City of Detroit*, No. 06-11282,

---

[1] Appellants filed a motion for partial summary judgment in December 2006 that impermissibly exceeded the district court's page limits. The district court struck the motion and directed Appellants to refile it in accordance with the local rules. For this reason, Appellants include the hours spent preparing three partial summary judgment motions, even though only two motions were decided on the merits.

2007 WL 2261418, at *1 (E.D. Mich. Aug. 6, 2007). The motion was largely successful. The district court concluded that the zoning ordinances, which gave the City broad discretion to regulate adult businesses, impermissibly imposed prior restraints on protected speech. It also found that the zoning ordinances violated the First Amendment because they "provide[d] no limitations of time upon the reviewing authorities to render an official approval or disapproval." *Id.* at *5. Rather than enjoin the City from enforcing the provisions, however, the district court directed the City to revise the zoning ordinances to comply with the First Amendment.

In April 2007, Appellants filed another motion for partial summary judgment, this one challenging the City's sign ordinances. *See H.D.V.-Greektown, LLC v. City of Detroit*, No. 06-11282, 2008 WL 441487, at *1 (E.D. Mich. Feb. 14, 2008), *aff'd in part and rev'd in part*, 568 F.3d 609 (6th Cir. 2009). This portion of the lawsuit arose after K & P sought approval from the City in 2004 to erect a sign advertising the nightclub's new name. The City had not acted on the request for at least three years. Appellants also partially succeeded on this motion. The district court concluded that the sign ordinances, though facially constitutional, were unconstitutional as applied to Appellants because the City's "multi-year delay in acting upon the Plaintiffs' sign permit applications ha[d] violated their fundamental right to engage in free speech under the First Amendment." *Id.* at *9. The district court ordered the City to allow Appellants to erect signs as described in their sign permit applications.

Appellants appealed the unfavorable portions of the district court's order on the second motion for partial summary judgment, and, in June 2009, this Court effectively resolved the merits dispute in their favor. *H.D.V.-Greektown, LLC*, 568 F.3d at 612–13. The Court

---

[2] The partial motions for summary judgment were substantial filings, each totaling 148 pages with exhibits.

concluded that, given the district court's determination that the zoning ordinances were unconstitutional, K & P was entitled to use its property for any lawful purpose. This Court also modified the district court's order so that K & P could erect signs that reflected the nightclub's most recent name change.

The parties settled the case on March 29, 2011, and Appellants voluntarily dismissed the Jane Roe Plaintiffs from the action on August 9, 2011. On August 23, 2011, the district court entered a consent decree awarding Appellants $2,950,000 in damages. The consent decree allowed Appellants to request attorneys' fees under 42 U.S.C. § 1988 and acknowledged that the parties had stipulated that Appellants were prevailing parties for the purpose of any award of attorneys' fees.

## C. Motion for Attorneys' Fees

On October 3, 2011, Appellants submitted a 334-page motion seeking attorneys' fees under § 1988. What followed was a somewhat protracted streak of filings: The City responded with a 210-page filing, Appellants then filed a 140-page reply and a 13-page supplement, and finally, the City filed a supplemental affidavit. In total, Appellants sought $1,532,640.61 in fees and costs.

On May 23, 2013, a magistrate judge issued a report and recommendation concluding that the motion should be granted in part and denied in part. Using the lodestar method for calculating attorneys' fees, the magistrate judge first determined that the hourly rates for Appellants' counsel were reasonable given each attorney's skill and experience and noted that counsel's hourly rate fell between the 75th and 95th percentile of civil rights lawyers with comparable skills.

The magistrate judge concluded, however, that the total number of claimed hours expended was not reasonable. In making that determination, the magistrate judge explained that he did not believe that First Amendment cases were intrinsically more difficult than other types of complex litigation, and he rejected Appellants' contention that the case was undesirable because it involved the adult entertainment industry. The magistrate judge also believed that Appellants were not entitled to certain fees. Specifically, he concluded that the district court's order from the 2003 Action foreclosed the award of attorneys' fees or costs from that action. Nor were Appellants, according to the magistrate judge, entitled to the $16,200 requested for work related to counsels' involvement in Councilwoman Conyers's criminal prosecution for bribery. The magistrate judge explained that "[t]he criminal case was a separate proceeding that involved separate parties." R. 162 R. & R. 8 (Page ID #5121).

After excluding the requested fees for the hours spent on the 2003 Action and the criminal proceedings, the magistrate judge turned to the reasonableness of the remaining requested fees. He noted that the parties had turned the attorneys' fees motion into another round of major litigation and that, given reasonable resistance to "extravagances," the district court had a duty to trim the excessive hours. *Id.* at 10–11 (Page ID #5123–24). The magistrate judge targeted three particular requests that, in his opinion, required some trimming. First, regarding the BZA proceedings, the magistrate judge concluded that Appellants were entitled to reimbursement for the time spent defending the district court's order from the 2003 Action. He added, however, that the issue surrounding Condition 18 "was a relatively minor part of the BZA proceedings" such that "[t]o ask for all fees related to the BZA proceedings [was] clearly excessive." *Id.* at 12 (Page ID #5125).

Second, the magistrate judge concluded that Appellants were not entitled to recover for the hours expended representing the Jane Roe Plaintiffs because they were voluntarily dismissed from the 2006 Action before the district court entered the 2011 consent decree, and thus the Jane Roe Plaintiffs "received no relief, including no monetary relief." *Id.* The magistrate judge noted that, although Appellants did have standing to assert declaratory relief claims on behalf of the Jane Roe Plaintiffs, doing so should have required little to no extra work. Third, the magistrate judge explained that counsel's "level of experience seems inconsistent with the astonishingly large number of hours claimed for researching the law and preparing pleadings." *Id.* at 13 (Page ID #5126). Ultimately, despite recognizing that "the level of counsel's representation in this hard-fought case was excellent," the magistrate judge recommended reducing the fees by 60%. *Id.* at 13–14 (Page ID #5126–27).

Appellants had sought a 10% fee enhancement given (1) the City's obstructive tactics; (2) the case's unpopular subject matter, which resulted in widespread media attention; and (3) counsel's low rates compared to other experienced First Amendment attorneys. The magistrate judge recommended denying the fee enhancement because (1) the time spent litigating the case was already factored into the lodestar calculation; (2) media attention was inherently beneficial to a lawyer's practice, and criminal matters were not compensable under § 1988; and (3) counsel's hourly rates fell between the 75th and 95th percentile of civil rights lawyers with comparable experience.

Next, the magistrate judge recommended a 60% reduction in costs commensurate with the 60% reduction in fees. He concluded that expert witness fees were not recoverable under § 1988 for 42 U.S.C. § 1983 actions and, finally, determined that the City was not entitled to a 15% reduction of the fee award based on its troubling financial condition.

The magistrate judge recommended awarding Appellants $372,118.19 in fees and $13,282.93 in costs, totaling $385,401.12. Appellants timely objected to the report and recommendation, asserting many of the same arguments they now raise on appeal. On March 31, 2015,[3] the district court adopted the magistrate judge's report and recommendation in full, overruled Appellants' objections, and granted in part and denied in part Appellants' motion for attorneys' fees. Appellants timely appealed.

## II. ANALYSIS

### A. The 60% Reduction in Fees and Costs

Appellants argue that the district court abused its discretion because it did not explain why a 60% reduction of the requested attorneys' fees and costs was appropriate. The City responds that a reduction was necessary because, even as otherwise shaved from the original request, the requested fees were unreasonable. It adds that 60%, specifically, was the appropriate reduction because counsel for Appellants expended excessive hours and exercised questionable billing judgment. We review the award of attorneys' fees under § 1988 for an abuse of discretion. *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 618 (6th Cir. 2013) (citing *Reed v. Rhodes*, 179 F.3d 453, 469 n.2 (6th Cir. 1999)).

To resolve this dispute, we first examine the context within which Appellants may seek fees. Section 1988 authorizes courts to award attorneys' fees to prevailing parties in civil rights actions. 42 U.S.C. § 1988(b). The aim of such fees is "to aid civil rights," not attorneys, *Binta B. ex rel. S.A.*, 710 F.3d at 612 (citations omitted), and thus the primary concern is whether the fee awarded under § 1988 is reasonable, *Reed*, 179 F.3d at 471; *see also Farrar v. Hobby*, 506 U.S. 103, 115 (1992) ("[F]ee awards under § 1988 were never intended to produce windfalls

---

[3] The proceedings were delayed when the City filed for bankruptcy in 2013.

to attorneys." (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (plurality opinion)) (internal quotation marks omitted)).

A "reasonable" fee is one "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). To determine whether a fee is reasonable, we apply the lodestar method, which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). We discern a reasonable hourly rate by "look[ing] to the prevailing market rates in the relevant community." *Perdue*, 559 U.S. at 551 (citation and internal quotation marks omitted). Courts should exclude hours that were not "reasonably expended," and "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (citation omitted).

On review, the district court's decision is generally "entitled to substantial deference, especially when the rationale for the award was predominantly fact-driven." *Binta B. ex rel. S.A.*, 710 F.3d at 628 (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). Moreover, "the district court has discretion to adjust the award based on relevant considerations peculiar to the subject litigation," the most critical of which is "the degree of success obtained." *Id.* (citation and internal quotation marks omitted). This Court generally "affirm[s] unless the [district] court's ruling is based on an erroneous view of the law or on a clearly erroneous assessment of the record." *Id.* (quoting *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005)).

To be sure, the discretion afforded to district courts is not absolute. *Adcock-Ladd*, 227 F.3d at 349. "[T]he district court must provide a clear and concise explanation of its reasons

for the fee award." *Id.* (quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)) (internal quotation marks omitted). While "[t]here is no precise rule or formula for making [fee] determinations," *Hensley*, 461 U.S. at 436, "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination," *Perdue*, 559 U.S. at 558. Without a reasonably specific explanation, "adequate appellate review is not feasible, and without such review, widely disparate awards may be made, and awards may be influenced (or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case." *Id.*

With these principles in mind, we agree with Appellants that the 60% reduction here lacks a sufficient explanation by the district court. We have noted "the difficulty in assessing fee applications with mathematical precision," *Binta B. ex rel. S.A.*, 710 F.3d at 639, but even so, a district court must support a particular increase or reduction with some articulable calculation or record evidence. The Supreme Court in *Perdue*, for instance, remanded in part because the district court did not properly justify why it had increased the requested fees by 75% "rather than [by] 50% or 25% or 10%." 559 U.S. at 557. The district court in *Perdue* had reasoned, in part, that the attorneys "had to make extraordinary outlays for expenses" and had waited an extended period of time for reimbursement. *Id.* at 557–58. The Court rejected that justification as inadequate, however, because the district court had not calculated what portion of the increase was attributable to the delays; "[n]or did the court provide a calculation of the cost to counsel of any extraordinary and unwarranted delay." *Id.* at 558. The result, the Court explained, was that the district court had increased the fees by an "essentially arbitrary" percentage. *Id.* at 557.

Similarly, in *Binta B. ex rel. S.A.*, we vacated the district court's 20% reduction because the district court did not "demonstrate why [it had] settled on 20%, as opposed to 43.5% or 60%

or 70%." 710 F.3d at 640. The defendants in *Binta B. ex rel. S.A.* had sought a 43.5% reduction of the fee award. *Id.* at 639. But the district court imposed a 20% reduction after "briefly and summarily describ[ing]" the thirty-year history of the litigation and noting that the plaintiffs' success was somewhat limited by their own efforts. *Id.* at 640. Given the complexity of the case, we concluded that that "explanation was insufficient" and remanded with instructions to "employ a methodology that permits meaningful appellate review." *Id.* (citation and internal quotation marks omitted).

Here, the explanation for imposing a 60% reduction similarly lacks the necessary specificity. The district court first determined, in agreement with the magistrate judge, that the hours spent on the 2003 Action and the criminal proceedings were not compensable. Excluding the hours expended on the 2003 Action brought the requested award to roughly $1.05 million, and Appellants had sought only $16,200 in fees for the criminal proceedings. At that point, however, the district court commented that an additional 60% reduction was warranted because counsel took an "indiscriminate approach" to the fee petition. R. 169 Order Adopting R. & R., Overruling Pls.' Objs., & Granting in Part Pls.' Mot. Att'y Fees & Costs ("Order Adopting R. & R.") 5 (Page ID #5218). The magistrate judge provided a more specific explanation. He noted that Appellants sought fees for the criminal proceedings, the BZA proceedings (the bulk of which were not reasonably expended on the 2006 Action), and representing the Jane Roe Plaintiffs (whose inclusion in the proceedings required little additional work). The hours expended on the criminal proceedings, however, were already excluded. Neither the district court nor the magistrate judge determined what portion of the remaining fees were attributable to the BZA proceedings and Jane Roe Plaintiffs. And at no point did either the district court or the

magistrate judge assert that those hours were a majority or even a substantial amount of the requested fees.

The district court also explained that Appellants are "extraordinarily profitable companies whose access to the judicial and political processes is far greater than most citizens[']" and that this case has a "tangential relationship [to] compelling civil rights." *Id.* at 4–5 (Page ID #5217–18). These considerations are plainly inconsistent with § 1988(b). So long as Appellants have prevailed in a qualifying civil rights action, they may be awarded attorneys' fees for the hours reasonably expended. *Cf. Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 636 (6th Cir. 1979) (explaining that, once the plaintiffs are determined to be the prevailing party, "they are entitled to recover attorneys' fees for all time reasonably spent on a matter." (internal quotation marks omitted)), *abrogation on other grounds recognized by L & W Supply Corp. v. Acuity*, 475 F.3d 737, 739 & n.6 (6th Cir. 2007). This is so regardless of the prevailing party's own financial resources. *See Lavin v. Husted*, 764 F.3d 646, 650 (6th Cir. 2014) ("A plaintiff's ability to pay his or her attorney . . . is irrelevant to the fee inquiry."). In addition, the magistrate judge remarked that, in his view, the hours were excessive given that counsel was an experienced First Amendment attorney. While we do not necessarily disagree, the magistrate judge did not indicate how many hours would have been reasonable to expend given counsel's experience and the length of the litigation, and so we are unable to gauge the accuracy of his assessment.

A more specific explanation would have been helpful in light of the considerations that suggest that a more substantial fee award would be appropriate here. Appellants succeeded in having the City's zoning ordinances declared facially unconstitutional. They prevailed in a case fought over years of litigation and in the face of repeated attempts by the City to circumvent their constitutional rights. The attempts were sometimes carried out legislatively through municipal

ordinances and, at other times, were targeted directly at K & P's nightclub through the City's refusal to consider Appellants' sign permit and transfer applications. In other words, this case involved thousands of hours of work spent defending fundamental constitutional rights and enforcing prior court orders that had vindicated those rights, the very kinds of efforts that § 1988 aims to promote. *See Binta B. ex rel. S.A.*, 710 F.3d at 612 ("[Section] 1988 plays a critical role in ensuring that federal rights are adequately enforced, and attorneys have every right to be compensated for any fees and expenses they reasonably incur." (citation and internal quotation marks omitted)).

The City argues that there was ample basis to conclude that the requested award was excessive. That argument misses the point. Our concern is not whether the requested fee award should be reduced but whether the reduction amount was appropriate and adequately explained. The magistrate judge noted that the attorneys' fees motion filings were voluminous, observed that the number of claimed hours seemed extraordinary given counsel's experience and level of expertise, and explained that Appellants were not entitled to reimbursement for the hours expended on ancillary proceedings or representing previously dismissed parties. Other than noting that courts in other cases "have reduced the total fees or hours by amounts ranging from 40% to 77%" and saying that the district court "does not have an obligation to make [counsel] millionaires," however, the magistrate judge provided no rationale for why 60% was the appropriate fee reduction. R. 162 R. & R. 13 (Page ID #5126). He gave similarly sparse reasoning for reducing the requested costs by 60%. *See id.* at 17 (Page ID #5130) ("I have recommended a reduction in the request for attorney[s'] fees by 60%, and a commensurate reduction in the request for costs is appropriate."). This reasoning is wholly inadequate. The

district court, in adopting that recommendation, did nothing to explain why 60% was the appropriate amount to account for those factors.

Accordingly, we conclude that the district court abused its discretion in reducing the award for attorneys' fees and costs by 60%, and we remand so that the district court can revisit, in light of this opinion, whether a mere blanket percentage reduction in fees truly is appropriate, and if so, by what measure, and ultimately to employ a methodology that permits meaningful appellate review.

**B. Jane Roe Plaintiffs**

We now turn to Appellants' other contentions. Appellants argue that they are entitled to the full fees for representing the Jane Roe Plaintiffs. We disagree. The Jane Roe Plaintiffs were voluntarily dismissed before the district court entered the consent decree, and they thus received no monetary relief and were not considered prevailing parties to the action. Although neither party disputes that Appellants have standing to assert facial constitutional challenges regarding the City's zoning ordinances on their employees' behalf, *see Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001), or that they have standing to assert declaratory relief claims on behalf of their employees, adding the employees to the litigation as Jane Roe Plaintiffs should not have been so onerous to warrant the award of the entirety of Appellants' requested fees attributable to that circumstance.

**C. Ancillary Proceedings**

**1. The 2003 Action**

Appellants argue that they are entitled to the fees from the 2003 Action because the 2006 Action was a continuation of that earlier litigation. Even if this is true, the parties stipulated in the 2003 Action that there would be no award of attorneys' fees. The district court

memorialized that stipulation in its subsequent order: "By stipulation of the parties, all claims in this action are dismissed without prejudice and without costs or an award of attorneys['] fees to any party." R. 84-6 2d Am. Compl. Ex. B, at 3 (Page ID #2517). As the district court explained during the fees proceedings below, "the placement of the phrase 'without prejudice' in that sentence indicates that the substantive claims were dismissed without prejudice, but any claims for costs or fees were dismissed with prejudice." R. 169 Order Adopting R. & R. 7 (Page ID #5220). Given their own stipulation, and the district court's order, Appellants are not entitled to fees related to the 2003 Action.

### 2. The Criminal Proceedings

Appellants argue that they are entitled to attorneys' fees for the hours expended on Councilwoman Conyers's criminal prosecution because those allegations were the sole basis for submitting the second amended complaint and because Appellants were required to participate in the proceedings. The City, however, was neither a party to nor involved in the criminal proceedings. To the extent that the bribes justified the filing of the second amended complaint, the changes made were minimal, as Appellants added only factual allegations. Finally, as the magistrate judge noted, the claimed hours related to the criminal proceedings included time spent "[meeting] with reporters and review[ing] articles and television reports." R. 162 R. & R. 8 (Page ID #5121). Fees incurred for such activity do not comport with § 1988's purpose to support civil rights litigation. We therefore conclude that Appellants are not entitled to fees related to the criminal proceedings.

### 3. The BZA Proceedings

Appellants also argue that they are entitled to the full fees from the BZA proceedings. The magistrate judge concluded that, to the extent that Appellants were entitled to fees for the

City's attempts to enforce Condition 18, those portions of the proceedings were "relatively minor," and the remaining time in the BZA proceedings was not reasonably expended on the pending lawsuit. *Id.* at 12 (Page ID #5125). The district court agreed. We conclude that this determination was not an abuse of discretion. The bulk of the proceedings were related to zoning violations charging K & P with "increasing the number of dancers and the number of days on which the entertainment was provided." *Id.* Those allegations had nothing to do with the constitutional challenges to the zoning and sign ordinances, which pertained to prior restraint and the City's refusal to resolve the permit applications in a timely manner. Although there is some evidence that the City had attempted to enforce Condition 18 during the proceedings, Appellants do not show that it was an issue substantial enough to justify an award of full fees—a burden that falls entirely on their shoulders. *See Webb v. Bd. of Educ. of Dyer Cty., Tenn.*, 471 U.S. 234, 242 (1985) ("[T]he party seeking an award of fees has the burden of submitting 'evidence supporting the hours worked and rates claimed.'" (citation omitted)).

**D. Fee Enhancement**

Appellants requested a 10% fee enhancement, which was denied. We conclude that the denial was not an abuse of discretion. Fee "enhancements may be awarded in 'rare' and 'exceptional' circumstances." *Perdue*, 559 U.S. at 552 (citations omitted). Appellants bear the burden of producing specific evidence that they are entitled to the fee enhancement. *Id.* at 553. Here, Appellants present no viable arguments for why this is a rare or exceptional circumstance. Nor do they present sufficient specific evidence demonstrating that they are entitled to a fee enhancement. First, Appellants assert that their counsel bills below market rate, but those concerns are already addressed through the lodestar method, which calculates fees based on the prevailing market rate. *Binta B. ex rel. S.A.*, 710 F.3d at 627 (citing *Missouri v. Jenkins by*

*Agyei*, 491 U.S. 274, 285–86 (1989)). A fee enhancement may be appropriate when the prevailing market rate fails to afford adequate compensation. *See Perdue*, 559 U.S. at 554–55 ("[A]n enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value."). Appellants have not shown that this is the case.

Second, Appellants argue that they obtained superior results. Although there are a few circumstances in which superior results would justify a fee enhancement, the Supreme Court has noted that those "circumstances are indeed 'rare' and 'exceptional,' and require specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'" *Id.* at 554 (citation omitted). Appellants have not made that showing here. Finally, Appellants' argue that the case was undesirable because it involved an adult entertainment business, but they offer no evidence that counsel representing adult entertainment businesses are subject to any undue pressure on their ability to obtain clients or adequate compensation for their work in representing them. As it is Appellants' burden to produce specific evidence, this argument fails because they do not substantiate it. *Cf. Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005) (affirming a fee enhancement based, in part, on two affidavits from attorneys attesting that the case was highly controversial).

For all these reasons, we conclude that Appellants have not shown that the district court abused its discretion in declining to award a fee enhancement.

**E.  Limit on Fees for Fees**

The magistrate judge recommended limiting the fees recoverable for litigating the attorneys' fees motion to 3% of the overall award, and the district court agreed. Appellants now challenge that decision, and they also challenge the continuing validity of the case that had

imposed the 3% cap rule, *Coulter v. Tennessee*, 805 F.2d 146 (6th Cir. 1986), *abrogated by The Ne. Ohio Coal. for the Homeless v. Husted*, Nos. 14-4083, 14-4084, 14-4132, 14-4133, 15-3295, 15-3296, 15-3380, 15-3381, --- F.3d ---, 2016 WL 4073489 (6th Cir. Aug. 1, 2016) (published). At the time, *Coulter* had permitted the district court to apply a 3% cap on the award of fees for fees absent a finding of unusual circumstances. *See id.* at 151. But we have recently abrogated *Coulter*, given the Supreme Court's decision in *Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154 (1990). *See Husted*, 2016 WL 4073489, at *28. Our precedent now dictates, consistent with *Jean*, that the award of fees for fees be determined under the *Hensley* reasonableness standard. *See id.* at *25. In light of *Husted*, we vacate the district court's fee for fee determination, and we remand for recalculation of that portion of the award.

## F. Reassignment on Remand

Finally, Appellants argue that the case should be assigned to a different judge on remand because the district judge below was "disrespectful to, and derisive and disparaging of, the Plaintiffs, their constitutional rights, and . . . their counsel." Appellants' Br. 56. "Although [the Court] ha[s] the authority pursuant to 28 U.S.C. § 2106 to remand the case to a different district court judge, 'this is an extraordinary power and should rarely be invoked.'" *Brown v. Crowley*, 312 F.3d 782, 791 (6th Cir. 2002) (quoting *Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 683 (6th Cir. 2002)). We can discern nothing in the record regarding the district court's consideration of the request for attorney's fees or in the subsequent order that would warrant reassignment. Accordingly, we decline to assign the case to a different district judge on remand.

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM IN PART, REVERSE IN PART, and REMAND** for recalculation of the attorneys' fees and costs.  Appellants' request for reassignment on remand is **DENIED**.